SAMUEL BRAEN, INC., AND BRAEN SAND AND GRAVEL CO., CORPORATIONS OF THE STATE OF NEW JERSEY, PLAINTIFFS-APPELLANTS, v. MAYOR AND GENERAL COUNCIL OF THE BOROUGH OF WALDWICK, DEFENDANT-RESPONDENT.

Argued November 17, 1958—Decided December 22, 1958.

Mr. *Frank J. Glock* argued the cause for appellants (Mr. *Guy W. Calissi,* attorney).

Mr. *Daniel Amster* argued the cause for respondent.

The opinion of the court was delivered by

WACHENFELD, J. On December 26, 1957 the Borough of Waldwick passed an ordinance which provided that no commercial vehicles having a combined gross weight of vehicle and load in excess of five tons should be permitted to use any municipally owned streets, with the exception of East Prospect Street between Franklin Turnpike and State Highway 17, where only trucks having a gross loaded weight of 15 tons or under would be permitted. The ordinance was approved by the State Director of Motor Vehicles pursuant to *R. S.* 39:4–8 and does not apply to county or state roads running through the borough.

One of the plaintiffs, Samuel Braen, Inc., owns a fleet of heavy-duty trucks and leases them to the other plaintiff,

Braen Sand & Gravel Company, a corporation which processes sand and gravel. The inventory site of the latter corporation is located on Brookside Avenue in Wyckoff, New Jersey. From this site, approximately 15 trucks carrying loads of sand and gravel are dispatched each day to plants manufacturing concrete in Hackensack, Ridgefield and Englewood, New Jersey. Each truck makes an average of five round trips daily, weighing about 35 tons when loaded and 13 tons when empty.

The principal road used by the trucks to reach their destinations in the southeastern portion of Bergen County is State Highway 17, an important north-south artery lying to the east of the Brookside Avenue inventory terminus. For a number of years in the past, plaintiffs have directed their trucks to State Highway 17 via two alternate routes, each one of which is used for about one-half of the trips made on any given day. The first route runs in a southeasterly direction on Franklin Turnpike to its intersection with State Highway 17. The second follows the Franklin Turnpike to its intersection with East Prospect Street and then runs almost due east along East Prospect Street to where it connects with State Highway 17. The segment of East Prospect Street formerly traversed by the trucks lies entirely within the Borough of Waldwick. Since the ordinance in question restricts East Prospect to commercial vehicles with a gross loaded weight of under 15 tons, plaintiffs' loaded trucks are now precluded from using that street to reach State Highway 17.

Plaintiffs brought this suit to have the ordinance declared invalid as being unreasonable, arbitrary and discriminatory and, therefore, *ultra vires*. They also seek an injunction restraining the borough from enforcing the provisions of the ordinance. The trial court ruled in favor of the borough, and plaintiffs appealed to the Appellate Division. We granted certification on our own motion.

Only one statute need be considered, since the borough disclaims any reliance on *R. S.* 40:67–16.1 *et seq.*, which permits the establishment in any municipality of a system

of truck routes. The pertinent enactment is *R. S.* 39:4–197, which is part of the chapter on "Traffic Regulation" and provides:

"No municipality shall pass an ordinance or resolution on a matter covered by or which alters or in any way nullifies the provisions of this chapter or any supplement to this chapter; except that a municipality may pass ordinances or resolutions, or by ordinances or resolutions may authorize the adoption of regulations by the board, body or official having control of traffic in the public streets, regulating *special conditions* existent in the municipality on the subjects and within the limitations following:

(1) Ordinance

a. * * *

b. Limiting use of streets to certain class of vehicles; * * *"

(Emphasis supplied)

The only issue is whether or not there were "special conditions" justifying the exclusion from East Prospect Street of trucks weighing more than 15 tons. Plaintiff corporations maintain that the record does not reflect the existence of such conditions, and they contend that the borough's ordinance has no direct relationship to the public safety and is, therefore, unreasonable and beyond the municipal powers. They stress the fact that their trucks meet every standard of safety and have not, according to corporate records covering the last twelve years, had an accident on East Prospect Street.

Geographically speaking, the Borough of Waldwick is a small community, having an area of approximately two square miles. It measures only about one mile from north to south and two and nine-tenths miles from east to west at its farthest points. It is, however, highly populated, having an estimated population of 9,000 persons. The distance along East Prospect Street between Franklin Turnpike and State Highway 17 is eight- to nine-tenths of a mile.

The enactment of the subject ordinance was recommended by the Waldwick Police Department. Captain Francis Mc-Grogan, who had been associated with the Department for nine years, testified that traffic on East Prospect Street was "not too bad" prior to 1955, but then "they started to have

a building siege which started at first one-tenth of a mile going east on East Prospect Street." Within this limited area, 17 retail establishments were constructed. The public library and the borough hall are located across the street from these stores, and the latter structure contains the fire department, the police department, the tax office, the offices of the borough clerk and building inspector and the regional board of health office which serves three communities. Diagonal parking is permitted, and persons leaving the vicinity must back out their automobiles into oncoming traffic. For the first 700 feet east of Franklin Turnpike, East Prospect Street is 40 feet wide. It then narrows to 30 feet. Captain McGrogan pointed out the traffic difficulties involved, stating that the people going to the regional board of health center "plus the people who are crossing back and forth to conduct this business, the library with the children and mothers, and the backing out of this traffic into Prospect Street * * * causes a very bad hazardous condition."

Additionally, he stated that 65 homes with 121 children of school age living in them are situated along the remaining length of East Prospect Street. Over the course of a week, he conducted a survey during and after school hours which showed a daily average of "616 children using this East Prospect Street to either go to St. Luke's in Ho-ho-kus, to our East Prospect Street school on the other side of town, plus our Julia Traphagen School, which the majority goes to." Two hundred and seventy of these children regularly journeyed back and forth from home to school on bicycles. Captain McGrogan testified:

"My opinion, the trucks with the weight were endangering lives. That's why I made this recommendation. For the good and welfare of our children."

The borough presented one other witness, its engineer, who testified as an expert on road construction and maintenance. He stated that the surface of East Prospect Street was failing along the southerly side where heavily laden

trucks customarily traveled, and that there were holes in the street. It was his opinion that the composition of East Prospect Street was too weak to bear heavy loads, and he attributed the deteriorated condition of the road, at least in part, to the heavy trucking to which it had been subjected.

 The ordinance in question is presumed to be valid, and the burden of establishing its invalidity rests upon the appellants. *E. g., Fischer v. Bedminster Tp.*, 11 *N. J.* 194 (1952); *State v. Mundet Cork Corporation*, 8 *N. J.* 359, *certiorari* denied 344 *U. S.* 819, 73 *S. Ct.* 14, 97 *L. Ed.* 637 (1952).

Our courts have held:

"It is settled in this state that the regulations of motor vehicles on particular streets, even to their complete exclusion therefrom, when deemed necessary in the public interest, is within the police power delegated to municipalities. *West v. [City of] Asbury Park*, 89 *N. J. L.* 402." *Peoples Rapid Transit Co. v. Atlantic City*, 105 *N. J. L.* 286, 291 (*Sup. Ct.* 1929), affirmed *per cur. sub nom. Parlor Car De Luxe Coach Co. v. Atlantic City*, 106 *N. J. L.* 587 (*E. & A.* 1930).

 And in actions brought to test the legality of ordinances enacted under *R. S.* 39 :4–197(1) (*b*), or its predecessor statute, the standard has been adopted that the exclusion of a certain class of vehicles from municipal streets must bear a direct relationship to the public safety and not be arbitrary, discriminatory or capricious. *Terminal Storage, Inc., v. Tp. of Raritan*, 15 *N. J. Super.* 547 (*Law Div.* 1951).

In *Garneau v. Eggers*, 113 *N. J. L.* 245, 248–249 (*Sup. Ct.* 1934), the court said:

"The regulation of motor vehicles on particular streets, even to their complete exclusion therefrom, when deemed necessary in the public interest, is within the police power delegated to municipalities, and, even though such regulation may be considered drastic in its operation, a court is not at liberty to substitute its judgment for that of a municipality as to the best and most feasible manner of curing traffic evils and traffic congestion in a specific area, in the interests of the welfare of the inhabitants and the persons who use the highway, where, as here, such regulation bears a direct relationship to the public safety and is reasonable and not arbitrary."

█ The record demonstrates the following quite impressively: the thoroughfare in question is a comparatively narrow street and difficult to police properly; many automobiles are constantly parking and pulling away, increasing the traffic hazard; municipal buildings and business establishments are centralized in the same area, and the roadway by reason thereof is traversed by many people shopping and going to and from work. Adding to these facts, the unusually large number of school children afoot and on bicycles going to and from school increases the potential for disaster and establishes the existence of the "special conditions" prerequisite to the enactment of the ordinance.

The totality of all these factors justifies the municipality in excluding extra heavy trucks which obviously make the situation more dangerous. Plaintiffs' trucks alone utilized East Prospect Street in Waldwick on an average of 75 times daily, and Captain McGrogan testified that other heavy-duty trucks had regularly traveled up and down this thoroughfare. The fact that no accident has as yet occurred is no logical reason why the borough should wait for one to materialize. The time to avoid a serious accident is before it happens.

All of these considerations, plus the fact that there are other convenient routes to State Highway 17 which are available to the plaintiffs for their business purposes, warrant the municipal determination to exclude the heavy trucks from the street in question, and its action, from the record, appears to be reasonable rather than discriminatory and arbitrary.

The judgment below is affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—7.

*For reversal*—None.