JOSEPH CUNNINGHAM AND WALLACE J. SCHONWALD, PLAINTIFFS-APPELLANTS, v. DEPARTMENT OF CIVIL SERVICE AND DEPARTMENT OF TRANSPORTATION, DEFENDANTS-RESPONDENTS.

Argued September 8, 1975—Decided December 16, 1975.

14 

Mr. *Stephen F. Lichtenstein* argued the cause for plaintiffs-appellants (*Mr. Stuart B. Dember* on the brief; *Messrs. Coleman, Lichtenstein, Levy & Segal,* attorneys).

Mrs. *Erminie L. Conley,* Deputy Attorney General, argued the cause for defendants-respondents (*Mr. Stephen Skillman,* Assistant Attorney General, of counsel, *Mrs. Conley*

on the brief; *Mr. William F. Hyland,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

SCHREIBER, J. Joseph ·Cunningham and Wallace J. Schonwald each held the Civil Service classified position of Director of Design (sometimes hereinafter referred to as DOD) in the Department of Transportation (DOT). Both were demoted to the status of Regional Highway Engineer when the position was eliminated in a reorganization of the Department in June 1971. They unsuccessfully contested the elimination of their jobs on the ground of bad faith. The challenge, which they carried through the Department of Civil Service and the Appellate Division of the Superior Court, terminated with a denial of their petition for certification to this Court. 67 *N. J.* 87 (1975).

When DOT renamed the position of Director of Administration as Director of Employee and Management Services (sometimes hereinafter referred to as DEMS) and placed it in the classified service, Cunningham and Schonwald asserted in a letter to the Commissioner of Transportation that they were entitled to a preemptive right to that position because its duties were comparable to those of the then non-existent DOD. Their claims were grounded on two statutory provisions, *N. J. S. A.* 11:15–9 and 10.

*N. J. S. A.* 11:15–9 provides that

When an employee of the State holding an office or position in the classified service * * * whose position or office has been * *· * abolished, such employee shall, whenever possible, be demoted to some lesser office or position, in the same department * * *·; and his name shall be placed upon a special re-employment list, which list shall take precedence over all other civil service lists.

*N. J. S. A.* 11:15–10 states that

Such person shall be entitled to reinstatement at any time thereafter in the same *or any comparable office or position of the same nature* as that from which he was separated as soon as the opportunity

arises. When an office or position of a character the same or comparable to that previously held by such person is to be filled, his name shall be certified from the special re-employment list for appointment. [Emphasis supplied].

The Commissioner of Transportation forwarded the Cunningham-Schonwald demand to the Civil Service Commission. William Druz, the Chief Examiner and Secretary of the Commission, after examining and comparing the specifications of DOD and DEMS, rejected their claim. He responded:

The application of management duties, the responsibilities, and the qualifications of the two concerned titles are substantially dissimilar.

Counsel for Cunningham and Schonwald wrote to the Commissioner and requested that "consideration be given to an early hearing on the present appeal." Mr. Druz replied that as Chief Examiner and Secretary he had the authority to determine "what titles are comparable and hence, whether a special reemployment list is considered appropriate for other positions", and that the Commissioner had formally approved his decision, which "must remain as the final administrative decision of this department."

An appeal was taken to the Appellate Division, which affirmed the action of the Civil Service Commission on the ground that the record supported the decision. The Appellate Division also concluded that Cunningham and Schonwald were not entitled to a hearing because the Chief Examiner and Secretary of the Civil Service Commission, by only comparing the specifications for the two positions, was "not performing a quasi-judicial function but an administrative function, ministerial in nature."

We granted certification. 67 *N. J.* 87 (1975).

The primary issues projected are: (1) whether the appellants are entitled to a hearing and, if so, the nature of that hearing; (2) whether the decision of the administrative agency contains sufficient findings of fact; and (3) whether

the conclusions of the administartive agency are supported by the record.

█ The Civil Service Act contains express provisions for a hearing on removal, demotion, suspension, fine or other discrimination contrary to the provisions of Subtitle 2 of the Civil Service Act. *N. J. S. A.* 11:5–1(d). Subtitle 2 of the Act includes *N. J. S. A.* 11:15–9 and 10. The plaintiffs, reiterating that the elimination of their former positions and the creation of the classified position of DEMS were part of a malevolent plan to demote them, assert that such discrimination entitles them to a hearing in accordance with the statutory mandate. The short answer to that contention is that the propriety of the abolition and demotion was the subject matter of the related case instituted by them in which the Commissioner held lengthy hearings and rejected their claims. Under these circumstances the Commission was fully justified in not reconsidering its prior determination (see *Handlon v. Town of Belleville,* 4 *N. J.* 99 (1950)), and the application of collateral estoppel to this claim is warranted. 2 *Davis, Administrative Law Treatise* § 18.03 at 559 (1958). *Cf. Lubliner v. Bd. of Alcoholic Bev. Con., Paterson,* 33 *N. J.* 428, 441–442 (1960).

█ The parties agree that, absent discrimination, no statutory provision in the Civil Service Act mandates a hearing where a person on the special reemployment list is refused reinstatement to a position alleged to be the same or comparable to the eliminated one.[1] Though that may be so,

---

[1] It has been held that *N. J. S. A.* 11:5–1(d) should be "liberally construed so as to provide an effective administrative remedy for persons in the classified service who are discriminated against contrary to the Civil Service Act * * *." *Flanagan v. Civil Service Department,* 29 *N. J.* 1, 14 (1959). The plaintiffs have not contended they were discriminated against in any manner other than the bad faith ground. *Quaere* whether the holding that the two positions are not comparable, if not factually supported, constitutes discrimination contrary to the provisions of the act.

where there are disputed fasts underlying the question of comparability, and the applicant has a necessary proprietary or special interest, the Commission is under an obligation to afford the affected party a hearing.

The right to a hearing before a governmental agency, whose proposed action will affect the rights, duties, powers or privileges of, and is directed at, a specific person, has long been imbedded in our jurisprudence. In *State v. Newark*, 25 *N. J. L.* 399 (Sup. Ct. 1856), the City Council of Newark assesed landowners a portion of the cost of certain sewers which were being installed. An action was brought to set aside the assessments, and the court held that the resolutions fixing the assessments were void because, among other things, there had been a lack of notice and hearing before the levy. The court stated:

* * * This is contrary to all our ideas of natural justice, and contrary to the well settled legal principle, that "whenever a court, or any person acting under legal authority, is to act judicially, or to exercise a discretion in a matter affecting the rights of another, the party thus to be affected is to have reasonable notice of the time and place when and where such act is to be done to the end that he may be heard in defence or for the protection of those rights." This is the language of Ch. Just. Hornblower, in delivering the opinion of the court in *The New Jersey Turnpike Co. v. Hall et al.*, 2 *Harr.* 337. He says that no principle or rule of action is better settled at the common law than this, * * *." [Id. at 411–412].

The principle of *State v. Newark*, that hearings may be required in proceedings before non-judicial bodies, was followed in a series of subsequent decisions. *Township of Kearney v. Ballantine*, 54 *N. J. L.* 194 (E. & A. 1891); *Decker v. Board of Excise*, 57 *N. J. L.* 603 (Sup. Ct. 1895); *Lambert v. Rahway*, 58 *N. J. L.* 578 (Sup. Ct. 1896); *Balling v. Elizabeth*, 79 *N. J. L.* 197 (Sup. Ct. 1909). Entitlement to the hearing may be ascribable to federal and state constitutional guarantees of due process (*Williams v. Civil Service Commission*, 66 *N. J.* 152 (1974); *McFeely v. Board of Pension Com'rs*, 1 *N. J.* 212 (1948)), or to the indispensability of fundamental procedural fairness

(*Avant v. Clifford*, 67 *N. J.* 496, 520–521 (1975); *Monks v. N. J. State Parole Board*, 58 *N. J.* 238 (1971)).

As the administrative agency became a more widely utilized forum for governmental action, it was also recognized that, in the absence of a specific statutory or constitutional requirement, hearings before administrative agencies might not be feasible or desirable. The impracticability of holding hearings where a class or large number of persons may be affected is obvious. *Bi-Metallic Investment Co. v. State Bd. of Equalization*, 239 *U. S.* 441, 36 *S. Ct.* 141, 60 *L. Ed.* 372 (1915). Furthermore, since the legislature was not required to hold hearings and legislative matters usually involve substantial numbers, it was resolved that where the agency's action constituted "purely a legislative function" a hearing was not required. *State Bd. of Milk Control v. Newark Milk Co.*, 118 *N. J. Eq.* 504 (E. & A. 1935); *Jamouneau v. Harner*, 16 *N. J.* 500 (1954), *cert.* den. 349 *U. S.* 904, 75 *S. Ct.* 580, 99 *L. Ed.* 1241 (1955). Need for a hearing was to be ascertained by determining whether the administrative agency was acting in a legislative or a quasi-judicial capacity.

Finding that a certain activity is quasi-judicial or legislative presupposes an ability to recognize a judicial or legislative power, an ability which may well be lacking. *C. C. Vogel, Study of State Administrative Agencies in New Jersey* at 249 (1941) (prepared under the supervision of Justice Jacobs). Professor Glasser has referred to the distinction as a "treacherous" one. "Administrative Law," 6 *Rutgers L. Rev.* 43 (1951).

Classification of the type of the proceeding as the determinant may also beg the question of the need for a hearing.[2]

---

[2]Professor Davis has commented: "More harmful than helpful is the proposition to which the courts often give lip service that hearings are required for judicial functions but not for legislative functions, especially when whole proceedings are characterized as judicial or legislative. The proposition is often unsound even when a function is clearly either legislative or judicial, and the proposition

1 *Davis, Administrative Law Treatise,* § 7.02 at 414, § 7.03 (1958). The same types of factual controversy and particularized effect on a person which decree a hearing may well exist in both legislative and quasi-judicial administrative agency proceedings. Illustrative of the point is public utility rate making. Rate making is generally considered legislative in nature. *Public Service Coordinated Transport v. State,* 5 *N. J.* 196, 214 (1950). Yet there can be no doubt that a public utility whose rates were being fixed and challenged would be entitled to notice and hearing. *St. Joseph Stock Yards Co. v. United States,* 298 *U. S.* 38, 73, 56 *S. Ct.* 720, 80 *L. Ed.* 1033 (1936) (Brandeis, J. concurring).

The problem has also been approached by asking whether the agency is obligated to consider the evidence and apply the law to the facts as found. An affirmative response has been held to determine that the agency's function is quasi-judicial and accordingly a hearing is required. Several cases have addressed the problem in that manner. In *McFeely v. Board of Pension Com'rs, supra,* where a Board of Pension Commissioners vacated a pension without a hearing, the Court wrote:

\* \* \* Where, as here, particularly as respects the requirement of honorable service, the administrative tribunal is under a duty to consider evidence and apply the law to the facts as found, thus requiring the exercise of a discretion or judgment judicial in nature on evidentiary facts, the function is *quasi* judicial and not ministerial. [1 *N. J.* at 216].

In *Handlon v. Town of Belleville, supra,* a Civil Service Commission order requiring the plaintiff to be restored to his former position of clerk of the recorder's court without notice or hearing to the parties was set aside. The Court noted:

often causes confusion in that no one knows how to classify many functions." "The Requirement of a Trial-Type Hearing," 70 *Harv. L. Rev.* 193, 201 (1956).

\* \* \* The quality of the act rather than the character of the agency exercising the authority is determinative of the nature of the power and the need for procedural due process. Where the administrative tribunal is under a duty to consider evidence and apply the law to the facts as found, thereby exercising a discretion or judgment judicial in nature on evidentiary facts, the function is ordinarily *quasi*-judicial and not ministerial. [4 *N. J.* at 105].

The crucial questions are whether the fact finding involves a certain person or persons whose rights will be directly affected, and whether the subject matter at issue is susceptible to the receipt of evidence. The nature of the factual inquiries may be dispositive or assist in the disposition of the issue. A question posed in terms of general policy may clearly fall in the "no hearing" category. Facts involved in resolution of a question of that type have sometimes been designated as legislative. Professor Davis distinguishes adjudicative and legislative facts in this manner:

\* \* \* Adjudicative facts are facts about the parties and their activities, businesses, and properties, usually answering the questions of who did what, where, when, how, why, with what motive or intent; adjudicative facts are roughly the kind of facts that go to a jury in a jury case. Legislative facts do not usually concern the immediate parties but are general facts which help the tribunal decide questions of law, policy, and discretion. "The Requirement of a Trial-Type Hearing," 70 *Harv. L. Rev.* 193, 199 (1956).

Where the administrative agency is acting in a general capacity, such as rule making, so that the direct effect of its factual conclusions will be imposed on a class or group, as distinguished from some specific person or persons, then it may well be that such a hearing is not required.[3] *Motyka v. McCorkle,* 58 *N. J.* 165 (1971). For example, no hearing would be required where the Department of Internal

---

[3] In some rule making proceedings a hearing may be warranted. Clagett, "Informal Action — Adjudicative Rule Making: Some Recent Developments in Federal Administrative Law," 1971 *Duke L. J.* 51, 85 (1971); *Walter Holm & Co. v. Hardin,* 145 *U. S. App. D. C.* 347, 449 *F.* 2d 1009 (D. C. Cir. 1971).

Revenue was prescribing standards for those who desired to practice before it, though one would be needed to deprive some individual of that right. *Goldsmith v. United States Bd. of Tax Appeals,* 270 *U. S.* 117, 123, 46 *S. Ct.* 215, 70 *L. Ed.* 494 (1926) (dictum). So, too, the promulgation by the Civil Service Commission of testing standards would not necessitate a hearing before the Commission on the propriety of these standards. Yet the refusal to permit an individual to take the examination may warrant an administrative hearing. *Volz v. Civil Service Com.,* 86 *N. J. Super.* 268 (App. Div. 1965) *(semble),* certif. den. 44 *N. J.* 398 (1965).

In passing, it might be noted that the Administrative Procedure Act *(N. J. S. A.* 52 :14B–1 *et seq.)* has also recognized that rule making which involves a "statement of general applicability and continuing effect that implements or interprets law or policy" is not subject to the same notice or hearing requirements that apply in a "contested" case. Compare *N. J. S. A.* 52 :14B–4 *with N. J. S. A.* 52 :14B–9. Significantly, that act defines a "contested" case in terms of legal relations of "specific parties" in contradistinction to statements of general applicability.

The appropriate approach is exemplified in *Jersey City v. Dept. of Civil Service,* 57 *N. J. Super.* 13 (App. Div. 1959). Upon analysis, the court concluded that where the Department of Civil Service had to determine whether "the actual duties and responsibilities of the job were comparable to those of" another position, the Department was required to grant a hearing because of controverted factual questions, the resolution of which might result in the ouster of the plaintiff from that position.

Contested factual issues which may be presented in an evidential manner in proceedings which are targeted at a person satisfy the first prerequisite for a hearing. *B. Schwartz, American Administrative Law* at 108–109 (2d ed. 1962). In such cases adjudicative, as opposed to legislative, facts will usually be at issue. The second prerequisite is that

the party affected by the administrative action have a safe-guarded interest. Particularized property rights or other special interests must exist. *Williams v. Civil Service Commission, supra,* 66 *N. J.* at 156; *Arnett v. Kennedy,* 416 *U. S.* 134, 94 *S. Ct.* 1633, 40 *L. Ed.* 2d 15, reh. den. 417 *U. S.* 977, 94 *S. Ct.* 3187, 41 *L. Ed.* 2d 1148 (1974); *Perry v Sindermann,* 408 *U. S.* 593, 92 *S. Ct.* 2694, 33 *L. Ed.* 2d 570 (1972); *Goldberg v. Kelly,* 397 *U. S.* 254, 90 *S. Ct.* 1011, 25 *L. Ed.* 2d 287 (1970); see *Board of Regents v. Roth,* 408 *U. S.* 564, 92 *S. Ct.* 2701, 33 *L. Ed.* 2d 548 (1972); Friendly, "Some Kind of Hearing," 123 *U. Pa. L. Rev.* 1267 (1975).

▮ Measured against these standards, a hearing is mandated in this case. The individual special interest or property right exists. Obviously, Cunningham or Schonwald, by virtue of their status on the special reemployment list, may be entitled to the position. *N. J. A. C.* 4:1–12.3(a).[4] Disturbance of the relationship of a civil service employee and the governmental employer by discharge is conditioned upon demands of procedural due process. *Handlon v. Town of Belleville, supra,* 4 *N. J.* at 107. The right to promotion by virtue of a statutory seniority list entails a vital element in the employer-employee relationship sufficiently akin to removal to warrant a finding of special interest.

Furthermore, there are seemingly contested adjudicative factual issues. Under the statute the problem which must be resolved is whether the functions, duties and responsibilities of the newly created classified position are the same or comparable to those previously carried out by the plaintiffs. It is not, as plaintiffs contend, whether their individual qualifications satisfy those of DEMS. The positions must

---

[4]Since only one name may be certified from the special reemployment list [*N. J. A. C.* 4:1–12.4] and there is one position to be filled, it may be that only one of the petitioners would be entitled to the hearing. *N. J. A. C.* 4:1–5.8(a) empowers the Commissioner to permit any other person whom he determines to have an interest in the matter to attend and participate.

be compared — not the qualifications of the individuals for the job. The Commission insists that the only pertinent facts are the specifications of the two jobs. But this may not be so. Although on the face of it the central theme as reflected in the specifications of DOD appears to be highway design engineering, and that of DEMS is general and supervisory skills, a large number of the duties described in the specifications are similar or identical. What duties has the temporary DEMS appointee actually been performing? Are these comparable to those performed by the petitioners as DOD? Is the authority of both positions similar? Are the responsibilities of each comparable? The petitioners should be given an opportunity to demonstrate that material differences are nonexistent. As pointed out above, they are not entitled to utilize this hearing to attempt to demonstrate that their prior positions were eliminated because of fraud, bad faith, etc. That matter was fully heard in the prior proceeding.

Petitioners should be permitted to make an offer of proof to the Commission buttressed by appropriate affidavits to reflect genuine issues as to any material facts. If petitioners have no such proof, then the need for a plenary type hearing does not exist. *Lavitz v. Civil Service Commission,* 94 *N. J. Super.* 260, 266 (App. Div. 1967) ; *Bingham v. Civil Service Commission,* 77 *N. J. Super.* 459, 468 (App. Div. 1962), aff'd o. b. 40 *N. J.* 330 (1963). In that event, petitioners should be given the opportunity to present argument orally or in writing that on the basis of the specifications the positions are similar and comparable. *Arthur Venneri Co. v. Paterson Housing Authority,* 29 *N. J.* 392, 404–405 (1959).

If an evidentiary hearing is required, it appears appropriate to follow the guidelines of the Administrative Procedure Act in "contested" cases. *N. J. S. A.* 52 :14B–9. As indicated above, that Act defines a "contested" case as any "proceeding * * * in which the legal rights, duties, obligations, privileges, benefits or other legal relations of specific parties are required by constitutional right or by statute to be determined by an agency * * * after opportunity for an agency hearing." *N. J.*

*S. A.* 52:14B–2(b). We have not passed upon the question of whether the federal or state constitutional guarantees of due process bring this case within the ambit of the Act, but do hold that the petitioners, under the circumstances described above, are entitled to a hearing as a matter of fundamental fairness and administrative due process.

■ The Commission's determination was embodied in the letter of Mr. Druz dated February 15, 1973, which simply stated that the positions were "not comparable and, therefore, the list cannot be exercised as appropriate. The application of management duties, the responsibilities, and the qualifications of the two concerned titles are substantially dissimilar." These factual conclusions are not sufficient. They generally reiterate the language of the statute, *N. J. S. A.* 11:15–10, and the New Jersey Administrative Code, *N. J. A. C.* 4:1–3.8(a)(8) and 4:1–16.5(c). So framed, the articulation of the factual findings and reasons is not satisfactory. *N. J. Bell Tel. Co. v. Communications Workers,* 5 *N. J.* 354, 374–375 (1950); *Grant Lunch Corp. v. Municipal Board of Alcoholic Beverage Control of Newark,* 64 *N. J. Super.* 553, 560 (App. Div. 1960); 2 *Cooper, State Administrative Law* at 473–478 (1965); see *Application of Howard Savings Institution,* 32 *N. J.* 29, 52 (1960). As we have previously stated on numerous occasions, the parties and the court are entitled to know the precise factual basis upon which the result has been reached. A court upon judicial review should not be forced to speculate as to the rational basis of the conclusion. Feller, in his article, "Prospects for the Further Study of Federal Administrative Law," 47 *Yale L. J.* 647 (1938), summarized the value of adequate findings as follows:

\* \* \* The advantages of carefully drawn findings are immense. They induce a sense of responsibility on the part of the administrative officer; their formulation aids immeasurably in the formulation of the decision; they limit the issues to be decided on review and save the time of litigants and the courts. All these advantages flow

from findings carefully drawn; if they are merely perfunctory they are completely useless. [Id. at 666].

Upon completion of the proceedings before it, the Commission should delineate the factual findings upon which its ultimate conclusions rest.

Since the matter must be remanded to the Commission, we shall not consider whether the conclusions reached are supported by the record.

The judgment is reversed and the matter remanded to the Civil Service Commission for further proceedings in accordance with this opinion.

Justice SULLIVAN and Justice CLIFFORD dissent. They would affirm substantially for the reasons expressed by the Appellate Division.

*For reversal and remandment*—Chief Justice HUGHES, Justices MOUNTAIN, PASHMAN and SCHREIBER and Judge CONFORD—5.

*For affirmance*—Justices SULLIVAN and CLIFFORD—2.