176 N.J. Super. 197 (1980)
422 A.2d 780
IN THE MATTER OF THE APPLICATION FOR A CERTIFICATE OF APPROVAL BY MICRO-CABLE COMMUNICATIONS CORP. D/B/A UA-COLUMBIA CABLEVISION OF NEW JERSEY FOR THE CONSTRUCTION AND OPERATION OF A CABLE TELEVISION SYSTEM PURSUANT TO A MUNICIPAL CONSENT GRANTED BY THE BOROUGH OF LEONIA. IN THE MATTER OF THE PETITION TO DENY APPROVAL OF ORDINANCE NO. 821 ADOPTED BY THE GOVERNING BODY OF THE BOROUGH OF LEONIA GRANTING A CABLE TELEVISION FRANCHISE TO UA-COLUMBIA CABLEVISION, INC.
(DOCKET NOS. 878C-6378, 787C-6385).
Superior Court of New Jersey, Appellate Division.
Submitted September 30, 1980.
Decided November 5, 1980.
*200 Before Judges MICHELS, ARD and FURMAN.
Carella, Bain, Gilfillan & Rhodes, for appellant UA-Columbia Cablevision of New Jersey (Charles C. Carella and Clifford G. Frayne on the brief).
John J. Degnan, Attorney General, for respondent Board of Public Utilities (Erminie L. Conley, Assistant Attorney General, of counsel; Nielsen V. Lewis, Deputy Attorney General, on the brief).
Greenstone & Sokol, attorneys for respondent Vision Cable Television Company (Leon J. Sokol, on the brief).
The opinion of the court was delivered by ARD, J.A.D.
This case involves applications for a cable television franchise in the Borough of Leonia. Micro-Cable Communications Corp. *201 (UA-Columbia) appeals the dismissal of its application for a certificate of approval. The primary question is whether UA-Columbia is entitled to a plenary hearing concerning its violations of N.J.A.C. 14:18-11.4 and N.J.A.C. 14:18-11.8.
Pursuant to N.J.S.A. 48:5A-1 et seq., Vision Cable Television Company (Vision) filed an application for municipal consent with the Borough of Leonia in January 1978. UA-Columbia filed an application with the same municipality in March 1978. The first hearing on the applications was held on March 29, 1978. The final hearing was scheduled for April 25, 1978. Prior to the final hearing the Leonia Cable Television Committee, created in accordance with N.J.A.C. 14:18-11.2, recommended the selection of Vision in its report to the borough.
On the day before the final hearing UA-Columbia hand-delivered a letter to the mayor and the six municipal council members. Although disputed by UA-Columbia, the letter unquestionably is a rebuttal of the Leonia Cable Television Committee's report which recommended Vision over UA-Columbia. A copy of this letter was mailed to Vision; however, it was not received until the day after the final hearing. During this hearing Vision indicated that it had not received the letter and was provided with a copy of same by a representative of UA-Columbia. Apparently unable to reach a decision on April 25, the governing body adjourned its meeting to April 28, 1978. On the latter date a resolution awarding consent to UA-Columbia was adopted by the mayor and council. A municipal consent ordinance was enacted on June 20, 1978 and accepted by UA-Columbia on June 26, 1978.
UA-Columbia then filed a petition with the Office of Cable Television, Board of Public Utilities (Board), requesting a certificate of approval based on the municipal consent awarded to it by the borough. Vision responded by petitioning the Board to deny UA-Columbia's request and also to grant certification to Vision pursuant to N.J.S.A. 48:5A-17(b), (d). This latter request was based on an allegation that the borough's action awarding consent to UA-Columbia was arbitrary.
*202 On February 28, 1979 the hearing examiner issued his report and recommendations to the Board. The examiner found that the April 24, 1978 letter[1] incorporated changes, modifications, clarifications or further explanations of its initial application, all in violation of N.J.A.C. 14:18-11.4 and N.J.A.C. 14:18-11.8. He further found that recesses taken by the borough council on April 25, 1978 were in violation of the Open Public Meetings Act, N.J.S.A. 10:4-6 et seq., and that a severe departure from the franchising procedures required by N.J.S.A. 48:5A-1 et seq. had occurred. He also held that Vision's application for municipal consent had not been arbitrarily denied, nor did regionalization considerations militate in favor of an award of a certificate of approval to Vision. As a result of his findings, the hearing examiner recommended that the UA-Columbia petition for a certification of approval be dismissed with prejudice and that Vision's petition be denied.
Thereafter, UA-Columbia filed a list of exceptions to the hearing examiner's report, requesting that a factual hearing be scheduled. The request for a hearing was denied. Subsequently the Board filed its "Decision and Order." The Board held that before a petition for certificate of approval may properly be considered, the municipal consent process must be found to have been in compliance with the provisions of N.J.S.A. 48:5A-17(a) and the rules and regulations concerning the municipal consent process of the Office of Cable Television. The Board adopted the hearing examiner's findings concerning the April 24 letter and dismissed UA-Columbia's petition for certificate of approval for failure to comply with N.J.S.A. 48:5A-17(a). An application for reconsideration was denied. This appeal followed.
UA-Columbia argues that "fundamental principles of due process and the Cable Television Act require that hearings *203 be held in this matter and that the failure to hold same has denied UA-Columbia due process." It also argues that the April 24, 1978 letter was not a violation. We disagree. In support of its contention that a hearing is required, UA-Columbia cities N.J.S.A. 48:5A-16, which provides in pertinent part:
a. The application for such a certificate of approval from the board shall be in writing, shall have attached thereto the municipal consents required under section 22 of this act, except that a CATV company which is authorized under section 25 of this act to continue operations after the expiration of a municipal consent and pending municipal action upon application made for renewal or reissuance of such consent may in lieu of such municipal consent attach to its application a statement regarding its authorization to continue operations under the provisions of section 25; and shall contain such other information as the director may from time to time prescribe by duly promulgated rule, regulation or order. Each such application shall be accompanied by a filing fee of $100.00.
b. Upon receipt of such application, the board shall review the same and shall, within 30 days of the receipt thereof, either issue the certificate applied for or order the director to schedule a hearing upon the application. No application shall be denied without a hearing thereon. [Emphasis supplied; footnotes omitted]
The defect in UA-Columbia's argument is that before the provisions of N.J.S.A. 48:5A-16(b) come into play, the provisions of N.J.S.A. 48:5A-17(a) must apply. The latter statute makes compliance with all applicable rules and regulations a condition precedent to a certificate of approval and provides in part:
a. The board shall issue a certificate of approval when, after reviewing the application, and after hearing if one is held, the applicant establishes to its satisfaction that the applicant has all the municipal consents necessary to support the application, that such consents and the issuance thereof are in conformity with the requirements of this act, and that the applicant has complied or is ready, willing and able to comply with all applicable rules and regulations imposed by or pursuant to State or Federal law as preconditions for engaging in his proposed CATV operations; provided, that in the case of any application which has omitted the attachment of municipal consent in the circumstance provided for in subsection a. of section 16 of this act, the board shall condition the issuance of the certificate upon the applicant's reasonably prompt attainment of the omitted municipal consent or reasonably prompt initiation of proceedings under subsection d. of this section. [Footnote omitted]
To appreciate this particular statute, the Cable Television Act as a whole must be examined. Under Article V of the act, any company which proposes to operate in a municipality is required to obtain a municipal consent before it may seek a certificate of approval from the Board. N.J.S.A. 48:5A-22. The municipal *204 consent must conform with the rules and regulations promulgated by the Board. N.J.S.A. 48:5A-25. Ordinarily the Board is authorized to issue a certificate of approval only after the applicant has demonstrated that it has all municipal consents necessary to support the application, that the consents and the issuance thereof comply with the requirements of the act and that the applicant has or will comply with all state and federal rules and regulations imposed as preconditions to the operation of a CATV system. N.J.S.A. 48:5A-17(a).
With that in mind, the Board's position in interpreting the statute is correct. UA-Columbia violated N.J.A.C. 14:18-11.4, which provides:
No member of the municipal governing body may communicate ex parte by telephone or otherwise, or meet with any applicant concerning any substantive matter contained in the application of file without first notifying all other applicants of such meeting or communication. Nothing herein shall prohibit communication, without notice, concerning procedural matters associated with the filing or hearing of an application.
and N.J.A.C. 14:18-11.8, which provides:
(a) Any applicant shall be allowed at any time until the date of hearing, after he has submitted his application, to provide additional information in the form of amendments to that application, provided, however, that the applicant shall be required to advise any other person whose application is on file at the time that such additions or amendments have been submitted. If any applicant wishes to provide additions or amendments to the application at any stage after the initial hearing has been called, or after the close of such hearing, he shall also be required to provide notice of such additions or amendments to each other applicant. At any stage of the hearing, the presiding officer may call for further evidence upon any issue and require such evidence to be presented by the applicant or applicants concerned.
(b) Copies of such amendments shall be filed with the Office within three days of the filing with the municipality.
Our study of the entire record supports the findings and conclusions of the hearing examiner that UA-Columbia failed to comply with these regulations. Furthermore, the record justifies the determination that no issue of fact existed with respect to UA-Columbia's violation of the foregoing regulations. Cf. Judson v. People's Bank and Trust Co. of Westfield, 17 N.J. 67, 75 (1954). A plenary hearing was unnecessary as there was no relevant issue in dispute. Because of these violations *205 the Board properly determined that UA-Columbia's municipal consent was invalid under N.J.S.A. 48:5A-17(a) and dismissed its application with prejudice. The applicant's ex parte distribution of the April 24 letter was a violation of N.J.A.C. 14:18-11.4 regardless of whether the substantive content of that letter was intended to be communicated surreptitiously. The language of the regulations clearly justifies such an interpretation. N.J.A.C. 14:18-11.4 is essentially a strict liability provision.[2] Its purpose is to preserve the integrity of local action. Any substantive communication with a member of the municipal governing body which takes place without prior notification to competing applicants is barred by the terms of the regulation. The requirement of N.J.S.A. 48:5A-17(a) that the municipal consent comply with all applicable state regulations mandates dismissal of an application for a certificate of approval for noncompliance. It is uncontroverted that Vision did not receive prior notice of the April 24, 1978 letter; therefore, no factual dispute existed, and there was no need for a plenary hearing since the regulations do not provide a defense for a violation of N.J.A.C. 14:18-11.4. In sum, the requirements of § 17(a) must be met before the provisions of § 16(b) apply.
The same rational applies with respect to the application of N.J.A.C. 14:18-11.8 to the April 24 communication. N.J.A.C. 14:18-11.8 requires that competing applicants be afforded notice of any amendatory matters submitted by an applicant for municipal consent. The crucial element to any communication made by an applicant for municipal consent is notice to competing *206 applicants. No notice was given to Vision, therefore, the regulations were violated. The very nature of the business requires strict compliance with the regulations. They were promulgated in response to a study by the State CATV Study Commission which strongly criticized the practices of the municipalities prior to the enactment of N.J.S.A. 48:5A-1 et seq. The Commission stated:
"Accusations of municipal corruption" in connection with the granting of franchises, also cited by the Legislature, have been so dramatically highlighted by the news media as to require little further emphasis here. On the contrary, it may be appropriate to point out that municipal corruption and favoritism are only a small part of the abuses and shortcomings of the municipal franchising process as it has existed. Certain allegations of corrupt overtures were related to this Commission by two CATV operators who testified before us; these allegations have been referred to the appropriate authorities. In addition, we have heard certain vague tales of apparent openness to corruption by municipal officials; how much of this stems from actual corrupt intentions and how much from a general aura of suspicion generated by a few prominent cases, we cannot, of course, estimate. [State of New Jersey, CATV Study Comm. Report, supra at 35-36; footnote omitted].
The prior notice provisions of the Administrative Code are an integral part of the regulatory process designed to eliminate even the appearance of impropriety in the award of CATV franchises at the municipal level. The dismissal of the application was proper.
Although unnecessary to our decision, we are also satisfied that UA-Columbia was afforded a "hearing" within the meaning of N.J.S.A. 48:5A-16(b). A hearing requirement imposed by the Legislature, without guidance as to procedure, need not necessarily be a plenary evidentiary hearing. In re Matter of Public Hearings, 142 N.J. Super. 136, 151 (App.Div. 1976), certif. den. 72 N.J. 457 (1976). An agency may properly require a party requesting a plenary-type hearing to make an offer of proof which demonstrates a disputed issue of material fact before such a hearing is held. See Cunningham v. Dept. of Civil Service, 69 N.J. 13, 25 (1975). Such an opportunity was afforded to UA-Columbia when the Board requested that UA-Columbia submit a list of exceptions to the hearing examiner's report. The exceptions demonstrated that no material issue of *207 fact was present. Such a determination by the Board will not be reversed on appeal unless shown to be arbitrary or capricious, or unsupported by the papers submitted. Campbell v. Civil Service Dep't, 39 N.J. 556, 562 (1963). The Board's determination that there was no material issue of fact is amply justified by the record.
Finally, we find no merit to the contention of UA-Columbia that due process requires a plenary hearing. This contention is based upon the argument that an applicant for a cable television franchise obtains a constitutionally protected interest when it receives a municipal consent. We disagree. The receipt of municipal consent is but one step in the process of franchising set forth by the Legislature. The municipal consent only empowers an applicant to apply for a Certificate of Approval. See In re Meadowlands Communications Systems, Inc., 175 N.J. Super. 53, 66 (App.Div. 1980). No property interest sufficient to invoke the full panoply of procedural due process rights was held by UA-Columbia. See Board of Regents v. Roth, 408 U.S. 564, 577-578, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). In addition, as we have indicated, UA-Columbia was afforded a hearing, albeit not an evidentiary hearing.
Affirmed.
NOTES
[1] Although it has some bearing with respect to N.J.A.C. 14:18-11.8, the substantive content of the letter is not really in dispute and is only incorporated by reference in this opinion.
[2] "... It further appears, that, as the tempo of CATV development picks up-as it has been doing and as it is likely to do even more sharply once the FCC's new regulations clear the way for more extensive `importation' of distant signals-the hazards of municipal franchising will also increase dramatically.

"This conclusion is consonant with the Legislature's previous determination that the `intense competition for franchises' has led to conditions requiring stricter regulation." [State of New Jersey, CATV Study Commission, Report to the Governor and the Legislature (January 4, 1972) at 35; footnote omitted].