209 N.J. Super. 267 (1986)
507 A.2d 304
TOWNSHIP OF CEDAR GROVE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
JOHN P. SHERIDAN, JR., COMMISSIONER OF THE DEPARTMENT OF TRANSPORTATION AND DEPARTMENT OF TRANSPORTATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted December 10, 1985.
Decided April 15, 1986.
*269 Before Judges MICHELS, GAULKIN and DEIGHAN.
Stickel & Koenig, attorneys for appellant (Stuart B. Koenig, on the brief).
Irwin I. Kimmelman, Attorney General of New Jersey, attorney for respondents (Deborah T. Poritz, Deputy Attorney General, of counsel; Susan R. Roop, Deputy Attorney General, on the brief).
Michael A. DeMiro, submitted a brief on behalf of amicus curiae Township of Borough of Verona (Alexander J. Graziano, on the brief).
The opinion of the court was delivered by DEIGHAN, J.A.D.
The issue on this appeal is whether a municipality is entitled to an adjudicatory, or any other type of hearing, prior to the installation of a traffic control signal on a State Highway by the New Jersey Department of Transportation. The Township of Cedar Grove (Cedar Grove) appeals from the decision of the New Jersey Department of Transportation (DOT) approving the installation of a traffic control signal at the intersection of State Highway Route 23 and Claridge Drive in the Borough of *270 Verona (Verona). Route 23 at this intersection is a dividing line between Cedar Grove and Verona. On application, Verona was granted leave to appear as amicus curiae in order to file a brief in favor of the decision to install the traffic signal.
Route 23 runs north and south between Verona and Cedar Grove. On its east side, Route 23 forms a T intersection with Claridge Drive in Verona, a private roadway which provides the only access to an apartment and condominium complex accommodating approximately 1,000 residents. Directly adjacent to Claridge Drive is a shopping center which has a traffic signal at its Route 23 entrance 300 feet north of the intersection of Claridge Drive. On its west side, approximately 50 feet south of the intersection with Claridge Drive, Route 23 forms a T intersection with Franklin Street in Cedar Grove, a municipal roadway connecting other streets in a residential neighborhood.
Since 1971, the DOT has received letters from residents and officials of Verona, as well as from State legislators, pointing out the dangers of the Route 23 and Claridge Drive intersection. The basic concern was the difficulty in making a left hand turn from Claridge Drive onto the southbound lanes of Route 23, a four lane highway. In 1972, the DOT investigated and rejected the installation of a traffic control signal at this intersection because of the close proximity of the traffic signal which regulates traffic entering and exiting the shopping center. A suggestion to prohibit left hand turns from Claridge Drive was considered and also rejected by the DOT. However, the DOT informed the Mayor of Verona that it would not object to an access road between Claridge Drive through the shopping center parking lot so that Claridge Drive motorists could use the shopping center traffic signal to make left hand turns onto Route 23.
In September 1981, the DOT again investigated the traffic problem at this intersection. Although a vehicle and pedestrian count indicated that a traffic control signal at the intersection was warranted, again no signal was installed because of the *271 proximity of the traffic signal located at the shopping center entrance. In June 1984, the plan involving a private access road through the shopping center was revived. The DOT sent a sketch of the proposed driveway to a representative of the condominium owners. Due to problems in allocating the responsibility for the maintenance of the access road, this alternative was ruled out.
Responding to the complaints of numerous citizens in Verona, and possibly "political pressure" as contended by Cedar Grove, the DOT subsequently withdrew its opposition to installation of a traffic signal at the intersection. Both Cedar Grove and Verona were notified by the DOT of the proposal to install the traffic signal. When Cedar Grove and its residents learned of the plan, they voiced strenuous opposition because the plan precluded left hand turns from Franklin Avenue in Cedar Grove onto Route 23. Cedar Grove requested a postponement of the project in order to present its views. The DOT acknowledged the opposition and assured Cedar Grove that it would consider its concerns, but refused to schedule a hearing. On December 17, 1984, the DOT officially notified the Mayors of Cedar Grove and Verona of its decision to install a traffic signal at the intersection of Route 23 and Claridge Drive and to prohibit left hand turns from Franklin Street onto Route 23. Cedar Grove appealed. We affirm.

I.
Cedar Grove contends that: (1) it is entitled to a plenary hearing to present its views and opposition to the installation of the traffic signal; (2) the decision of the DOT to install the traffic signal does not contain sufficient findings of fact; and (3) the decision (a) is arbitrary, capricious and unreasonable, (b) is not supported by the record, and (c) was contrary to the DOT's procedure.
In addition to denying the contentions of Cedar Grove, the DOT argues that Cedar Grove, as a municipal corporation, has *272 no rights under the Federal Constitution which may be invoked against the State and further contends that a municipality cannot challenge the actions of the State as a representative of its taxpayers, citing Trenton v. New Jersey, 262 U.S. 182, 185-186, 43 S.Ct. 534, 536, 67 L.Ed. 937 (1923); Newark v. New Jersey, 262 U.S. 192, 196, 43 S.Ct. 539, 540, 67 L.Ed. 943 (1923); Bergen County v. Port of N.Y. Authority, et al., 32 N.J. 303 (1960), and Bor. of Pitman v. Skokowski, 193 N.J. Super. 215 (App.Div. 1984). In opposition, Cedar Grove relies upon Tp. of Dover v. Bd. of Adj. of Tp. of Dover, 158 N.J. Super. 401 (App.Div. 1978); Application of John Madin/Lordland Development, 201 N.J. Super. 105 (App.Div. 1985).
In the seminal case of Bergen County v. Port of N.Y. Authority, et al., the New Jersey Supreme Court, in affirming the dismissal of the complaint, interpreted the county's action as an attempt "to vindicate the general public interest upon an allegation that another agency of government, the Port Authority, is exceeding its statutory powers." Id. 32 N.J. at 311. The Court held that the county could not "assume the role of defender of the general public interest," id., and could not "attack the actions of other state agencies solely on the thesis that it represents its citizen taxpayers." Id. at 315.
In Dover, the municipality instituted an action against its Board of Adjustment. This court held that the municipality had standing to file an action because it asserted an intrusion into its exclusive sphere of governmental action by another public body. 158 N.J. Super. at 410. "The injury complained of moreover, [was] not merely the individual or collective one of its taxpayers or citizens but also an injury to it in its corporate capacity." Id. See 17 McQuillin, Municipal Corporations, § 49.02 at 122 (1982). In Madin, this court held that the planning boards of two townships had standing to contest approvals granted by the New Jersey Pinelands Commission for major developments in their respective communities.
*273 Cedar Grove has a sufficient stake in the subject matter. See Crescent Pk. Tenants Assoc. v. Realty Eq. Corp. of N.Y., 58 N.J. 98, 107-108 (1971) ("due weight [is given] to the interests of individual justice, along with the public interest, always bearing in mind that throughout our law we have been sweepingly rejecting procedural frustrations in favor of `just and expeditious determinations on the ultimate merits.'"). Technicalities of procedure should be avoided in favor of disposition on the substantive merits. Vanderwart v. Dept. of Civil Service, 19 N.J. 341, 347 (1955). The location of the traffic signal will impact upon the control and regulation of traffic in Cedar Grove. We therefore hold that Cedar Grove has standing in the present litigation.

II.
In its contention that it is entitled to a hearing, Cedar Grove traverses the field of administrative law and explores recent decisions as to whether the installation of a traffic light by the DOT is legislative, adjudicative, quasi-judicial or rule-making. Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313 (1984); Crema v. N.J. Dept. of Environmental Protection, 94 N.J. 286 (1983); In re Uniform Adm'v Procedure Rules, 90 N.J. 85 (1982); Texter v. Human Services Dept., 88 N.J. 376 (1982); Bally Mfg. Corp. v. N.J. Casino Control Comm'n., 85 N.J. 325 (1981); Cunningham v. Dept. of Civil Service, 69 N.J. 13 (1975); Kelly v. Sterr, 62 N.J. 105 (1973), cert. den. 414 U.S. 822, 94 S.Ct. 122, 38 L.Ed.2d 55 (1973); Bailey v. Council of the Div. of Planning, etc., State of N.J., 22 N.J. 366 (1956); McKenna v. N.J. Highway Authority, 19 N.J. 270 (1955); In re Crowley, 193 N.J. Super. 197 (App.Div. 1984); Family Finance Corp. v. Gough, 10 N.J. Super. 13 (App.Div. 1950). Cedar Grove "suggests" that the decision to install the traffic signal is adjudicatory and concludes that, in any event, it is entitled to a hearing.
*274 Classification of agency action, though easy in theory, is often difficult to apply in specific cases. Texter, 88 N.J. at 384. The question of whether an agency determination is rule-making or adjudicative is a close one, and frequently is a hybrid, partaking of both the rule-making and adjudicatory mode. Metromedia, 97 N.J. at 332. Whether an agency activity is quasi-judicial or legislative presupposes an ability to recognize a judicial or legislative power, an ability which may well be lacking. Cunningham, 69 N.J. at 20. These labels are descriptive rather than determinative. 2 Am.Jur.2d, Administrative Law, § 403 at 211-212. Professor Davis in his comprehensive treatise on administrative law concludes that: "Sometimes the base solution of a problem in a particular case of classifying borderline activities may be to avoid classifying them  to skip the labeling and to proceed directly to the problem at hand." 2 Davis, Administrative Law Treatise, § 7:2 at 7 (2 ed. 1979) (Emphasis in original). Accordingly then, we will proceed directly to the problem.

III.
We reject Cedar Grove's contention that under the Administrative Procedure Act, N.J.S.A. 52:14B-1 et seq., the decision to install a traffic signal at Route 23 and Claridge Drive was adjudicatory. The issue that a hearing is mandated by the Administrative Procedure Act was raised and rejected by this court in Little Falls Tp. v. Bardin, 173 N.J. Super. 397, 404-405 (App.Div. 1979), certif. den. 82 N.J. 286 (1980):
We concluded that the act does not create a substantive right to a hearing, but merely details the procedure to be followed where a hearing is otherwise required by statutory law or constitutional mandate. See Public Interest Research Group v. State, 152 N.J. Super. 191, 205 (App.Div. 1977), certif. den. 75 N.J. 538 (1977); In re Environmental Protection Dep't., 139 N.J. Super. 514 (App.Div. 1976).
See also In re App. of Modern Indus. Waste Service, 153 N.J. Super. 232, 239-240 (App.Div. 1977).
Adjudicatory proceedings usually determine the legal rights and relations of specific individuals or a limited group of *275 individuals. These determinations often involve disputed factual issues and require evidence and cross-examination for proper resolution. Contested cases are those in which the Constitution or a statute requires an adjudicatory hearing. Texter, 88 N.J. at 384-385. See also N.J.S.A. 52:14B-2(b) defining a contested case as one requiring a statutory or constitutional right.
As acknowledged by Cedar Grove, there is no statute which requires any type of hearing before the installation of a traffic signal. In order to establish a constitutional right to a hearing two prerequisites are required: (1) contested factual issues which may be presented in an evidentiary manner in proceedings which are targeted at a person, group of persons or entity, and (2) particularized property rights or other special interests. In re North Jersey Dist. Supply Comm'n., 175 N.J. Super. 167, 203 (App.Div. 1980), certif. den. 85 N.J. 460 (1981); Public Interest Research Group v. State, 152 N.J. Super. 191, 205 (App.Div. 1977). In many situations a hearing is not required by statute, regulation or by the due process clause. It is not essentially arbitrary for an administrative agency to exercise its lawful authority without a hearing where none is required. 2 Am.Jur., supra, § 403 at 210. As stated by Professor Davis:
[A] dispute about facts that have to be found on "individual grounds" must be resolved through trial procedure, but a dispute on a question of policy need not be resolved through trial procedure even if the decision is made in part on the basis of broad and general facts of the kind that contribute to the determination of a question of policy. [2 Davis, supra, § 12:3 at 412].
[A] tribunal's findings about a party have to be supported by evidence but ... facts a tribunal uses for declaring law or for making policy need not be and sometimes cannot be. [Id. at 413-414].

IV.
The Commissioner of the Department of Transportation has been vested with the power to approve the installation of traffic control signals. N.J.S.A. 39:4-120 provides:
The director may determine the character, type, location, placing and operation of all traffic control signal devices on the highways of the State. The *276 director[1] may adopt a manual and specifications for a uniform system of traffic control signals consistent with the provisions of this act for use upon public highways within the State. Such uniform system shall correlate with and so far as possible conform to the system then current as specified in the "Manual on Uniform Traffic Control Devices for Streets and Highways."
At the time of the enactment of the above statute, the Legislature made certain findings concerning the policy and regulation of traffic:
The Legislature hereby finds and declares that the administration, development and enforcement of laws and regulations relating to traffic, and the regulation and control of the character, type, location, placing and operation of all official traffic controls devices on the streets, highways and public places in New Jersey require co-ordination and co-operation between the State and individual local authorities; that although there should be a general, State-wide policy concerning the movement of traffic and traffic control devices, that policy should be sufficiently flexible to take into account such factors as aesthetics, practicability and community interests, and should permit a consideration of particular circumstances in individual municipalities; and that it is the purpose of this act to provide for the efficient formulation of such a flexible State-wide policy concerning the movement of traffic and traffic control devices in the public interest. [N.J.S.A. 27:1A-43].
The basic purpose of establishing agencies to consider and promulgate rules is to delegate the primary authority of implementing policy in a specialized area to governmental bodies with the staff, resources, and expertise to understand and solve those specialized problems. Bergen Pines Hosp. v. Dept. of Human Serv., 96 N.J. 456, 474 (1984).
Pursuant to N.J.S.A. 27:1A-5 the Commissioner of Transportation adopted a comprehensive set of traffic regulations, N.J.A.C. 16:27-1.1 et seq., including "warrants" or indicia for the installation of traffic signals. N.J.A.C. 16:27-3.1 et seq. The basic principles concerning the design and usage of traffic control devices in the regulations are governed by the "Manual on Uniform Traffic Control Devices for Streets and Highways" issued by the United States Department of Transportation, *277 Federal Highway Administration. Those regulations indicate that data must be obtained to permit a factual determination of "warrants" upon which the need, type and operation of a traffic signal is based. N.J.A.C. 16:27-3.1(b). "[W]arrants will eliminate haphazard experimentation and contribute immeasurably toward the installation of signal devices for the improvement of traffic flow." Id. Subsection (c). The regulations require advanced engineering data and provide that traffic signals shall not be installed unless the conditions meet the warrants as set forth in the Manual on Uniform Traffic Control Devices for Streets and Highways. N.J.A.C. 16:27-3.3(a). The need for signal control is to be determined from several prevailing traffic elements which must be evaluated in conjunction with others. Id. Subsection (b). These include consideration of minimum vehicle volume, interruption of continuous traffic, relationship to adjacent signals, minimum pedestrian volume, and accident hazard. The regulations state that "it is impractical to attempt the construction of a specific warrants-formula to be applied in a stereotyped manner" but acknowledge that "[t]here will often be situations where no one warrant is completely satisfied, but where a combination of warrants are sufficiently fulfilled to justify a signal installation." N.J.A.C. 16:27-3.9(a).
In furtherance of the uniform requirements for the installation of traffic signals, a county or municipality must apply to the Commissioner, who, after an investigation and survey, may approve the installation of a traffic light by the county or municipality. N.J.S.A. 39:4-121.1; N.J.A.C. 16:27-4.1 et seq. The regulations promulgated by the DOT are of "general application and continuing effect," Metromedia, 97 N.J. at 328; see Crema, 94 N.J. at 299, are "intended to be applied as a general standard and with widespread coverage," Metromedia 97 N.J. at 329, and are administrative rule-making. See criteria to determine administrative rule-making, Metromedia at 331-332.
*278 The DOT
has disciplined its own discretion by promulgating a regulation to assure the greatest possible degree of "predictability" in its own actions. N.J.A.C. 7:7E-1.1. This is salutary. "[A]dministrative officers [should] articulate the standards and principles that govern their discretionary decisions in as much detail as possible." Environmental Defense Fund, Inc. v. Ruckelshaus, 439 F.2d 584, 598 (D.C. Cir.1971). [Crema, 94 N.J. at 301].

V.
The decision of the DOT concerning the installation of a traffic signal at the intersection invoked the regulatory precepts which have been promulgated by its rule-making authority. The DOT made an investigation of the facts to be applied within the parameters of the regulations concerning the installation of traffic signals. N.J.A.C. 16:23-3.1 et seq. Investigatory proceedings do not require a hearing. Investigations by administrative agencies or officials have been considered to be informal proceedings to obtain information to govern future actions, and not proceedings in which action is taken against anyone. 73 C.J.S., Public Administrative Law and Procedure, § 76 at 555. An investigatory proceeding is not adversarial but ex parte in nature, and its purpose is to discover and produce evidence. Ibid.
The regulation of motor vehicles on particular streets, when deemed necessary in the public interest, is within the police power of governmental authorities. Peoples Rapid Transit Co. v. Atlantic City, 105 N.J.L. 286, 291 (Sup.Ct. 1929), aff'd o.b. sub. nom. Parlor Car De Luxe Coach Co. v. Atlantic City, 106 N.J.L. 587 (E. & A. 1930); accord Samuel Braen, Inc. v. Waldwick, 28 N.J. 476, 481 (1958).
Municipalities may legislate by ordinances or resolutions to control traffic, N.J.S.A. 39:4-197, subject however to the approval by the Commissioner of the DOT. N.J.S.A. 39:4-202 and 39:4-8. For this reason, residents of a municipality may not, through initiative and referendum, amend a comprehensive traffic ordinance of a municipality, In re Certain Petitions for Binding Referendum, 154 N.J. Super. 482, 487 (App.Div. 1977), *279 nor may they compel the adoption and enforcement of traffic regulations through proceedings in lieu of prerogative writs. Viera v. Town Coun. Tp. Parsippany-Troy Hills, 156 N.J. Super. 19 (App.Div. 1977), certif. den. 77 N.J. 487 (1978).
Just as a municipality is not mandated to "follow the formalities required for the passage of an ordinance," Weinstein v. City of Newark, 100 N.J. Super. 199, 220 (Law Div. 1968), "each and every time the signal is placed, removed, relocated or retimed," ibid., the DOT is not required to conduct a hearing for the installation of a traffic signal. Only the Commissioner of the DOT "may determine the character, type, location, placing and operation of all traffic control signal devices on the highways of this State." N.J.S.A. 39:4-120. The exercise of that authority within the ambit of his delegated powers is a matter of legislative discretion, Viera, 156 N.J. Super. at 21, for which neither a hearing, Cunningham, 69 N.J. at 20, nor findings of facts are required. In re App. of Modern Indus. Waste Service, 153 N.J. Super. at 238-240.
No matter where the traffic control signal is located, it is "bound to adversely affect some interests. The problem is to achieve a proper balance between the general public interest and local needs and considerations." Tp. of Hopewell, et al. v. Goldberg, et al., 101 N.J. Super. 589, 598 (App.Div. 1968), certif. den. 52 N.J. 500 (1968) (recommendation of proposed route alignment of interstate highway by Commissioner of DOT). "Almost any traffic regulation  whether it be a temporary detour during construction, a speed limit, a one way street, or a no-parking sign  may have a differential impact on residents of adjacent or nearby neighborhoods." Memphis v. Greene, 451 U.S. 100, 128, 101 S.Ct. 1584, 1601, 67 L.Ed.2d 769 (1981).
Where a governmental authority makes a determination as to the best interest and most feasible manner of curing traffic evils and traffic congestion in a specific area, and such regulation bears a direct relationship to the public safety, such determination is reasonable and not arbitrary. A court is not at liberty to substitute its judgment for that of a governmental *280 authority. Garneau v. Eggers, 113 N.J.L. 245, 248-249 (Sup. Ct. 1934); accord Samuel Braen, Inc. 28 N.J. at 481. "[C]ourts will not interfere with the manner in which [the DOT] exercises its power in the absence of bad faith, fraud, corruption, manifest oppression or palpable abuse of discretion...." City of Newark v. N.J. Turnpike Authority, 7 N.J. 377, 381-382 (1951). Accord Viera, 156 N.J. Super. at 22.
In the present case, hundreds of residents of Cedar Grove, through signed petitions and individual letters, have brought to the attention of the DOT their concern as to the installation of the traffic signal involved. The DOT, relying on the Manual on Uniform Traffic Control Devices on Streets and Highways and with awareness of the concern of the residents and authorities of Cedar Grove, has investigated the matter and considered minimum vehicular volume, interruption of continuous traffic, relationship to adjacent signals, minimum pedestrian volume and accident hazard. As a result the DOT has nevertheless determined that the traffic signal is to be installed at its present location. See Viera at 22. We find no arbitrary, unreasonable or capricious abuse of discretion.
Affirmed.
NOTES
[1] Pursuant to N.J.S.A. 27:1A-44, L. 1969, c. 65, § 2, effective July 1, 1969, all powers and duties of the Director of the Division of Motor Vehicles were transferred to the Commissioner of Transportation of the Department of Transportation.