888 A.2d 454

IN RE NJPDES PERMIT NO. NJ0025241
ISSUED TO ASBURY PARK CITY.

Argued September 27, 2005—Decided January 11, 2006.

*Susan J. Kraham,* Staff Attorney, Rutgers Environmental Law Clinic, argued the cause for appellant, Clean Ocean Action.

*A. Colleen Malloy,* Deputy Attorney General, argued the cause for respondent, New Jersey Department of Environmental Protection (*Peter C. Harvey,* Attorney General of New Jersey, attorney; *Patrick DeAlmeida,* Assistant Attorney General, of counsel; *Caroline K. Stahl,* Deputy Attorney General, on the brief).

Justice LaVECCHIA delivered the opinion of the Court.

This appeal involves the Water Pollution Control Act (WPCA), *N.J.S.A.* 58:10A–1 to –43, and the hearing rights that it confers in respect of pollution discharge permits issued by the New Jersey Department of Environmental Protection (DEP). Specifically, we are called on to examine a hearing-right claim advanced by an entity, not the WPCA permit applicant, requesting "party" status pursuant to *N.J.S.A.* 58:10A–7e. That statute entitles those with such status to an administrative hearing to contest the grant of a WPCA pollution discharge permit.

Clean Ocean Action (COA) is an organization devoted to environmental interests. It applied for party status under *N.J.S.A.* 58:10A–7e in connection with a WPCA permit application submitted by the City of Asbury Park (Asbury Park). COA sought an administrative hearing to challenge the DEP's proposed determination renewing the pollution discharge permit for Asbury Park's wastewater treatment facility. Because the DEP denied COA's hearing request and granted the permit, actions which were

affirmed by the Appellate Division, COA sought relief from this Court. We granted the petition for certification to review COA's claim of DEP noncompliance with the WPCA standard for entitlement to this statutorily created, third-party hearing right. *In re NJPDES Permit No. NJ0025241*, 183 *N.J.* 257, 872 *A.*2d 799 (2005). We now affirm the judgment of the Appellate Division.

## I.

The WPCA governs the process for issuance of pollution discharge permits, thereby providing a comprehensive water pollution control and enforcement program for the protection of the State's waters. Simply stated, the WPCA makes unlawful the discharge of any pollutant into the State's surface or ground waters without either a valid New Jersey Pollutant Discharge Elimination System (NJPDES) permit or an exemption from the permit requirement. *N.J.S.A.* 58:10A–6a. The statute empowers the DEP Commissioner to grant, deny, modify, suspend, revoke, and reissue NJPDES permits. *N.J.S.A.* 58:10A–6c.

Asbury Park held NJPDES permit no. 25241 (Permit). It was due to expire on August 31, 2000. The Permit enabled the Asbury Park Water Quality Control Facility (Facility) to discharge treated, disinfected, domestic wastewater into the Atlantic Ocean. When Asbury Park applied for the Permit's renewal, the Facility had a permitted monthly average flow of 4.4 million gallons per day and was discharging into the State's waters a monthly average flow of 1.6 million gallons per day. In response to that application, the DEP prepared and published a draft permit consistent with *N.J.A.C.* 7:14A–15.10, thus commencing a thirty day period within which the public could comment on DEP's proposed action. Although there were other comments, we focus here on those submitted by COA.

COA submitted lengthy negative comments on the proposed Permit that, on the whole, characterized the Permit as not adequately protective of the ocean ecosystem and as violative of the federal Clean Water Act, 33 *U.S.C.* §§ 1251 to 1387, because the

Permit's terms did not meet Ocean Discharge Criteria (ODC) requirements.[1] As later summarized by the DEP Commissioner in his order denying COA an administrative hearing, COA alleged that: (1) the DEP made an insufficient effort to provide the public with documentary information that would allow for adequate public review of the proposed Permit; (2) the materials contained a numerical discrepancy between the water volumes that were treated and discharged by the Facility; (3) the Permit failed to establish numerical effluent limitations for enterococci;[2] (4) the DEP did not substantiate its finding of "no unreasonable degradation" under the federal ODC; (5) additional permit requirements should have been established to ensure that the ocean ecosystem was not degraded by the discharge; and (6) coordination between the DEP and the National Marine Fisheries Service, as contemplated by the Sustainable Fisheries Act of 1996,[3] had not occurred.

After considering the public comments received, the DEP determined to renew Asbury Park's Permit. The Permit issued in final form on May 30, 2002. In a separate document responding to the public comments received, the DEP explained its determination not to alter the approved version of the Permit as a result of specific criticisms, including COA's.

COA made a timely request for an adjudicatory hearing under *N.J.S.A.* 58:10A–7e and, shortly thereafter, supplemented the substance of its hearing request. Approximately sixteen months after receipt of that request, the Commissioner of the DEP issued

---

[1] ODC guidelines are imposed through the Clean Water Act and limit the discharge of pollutants into navigable waters. *In re Issuance of a Permit by Dep't of Envtl. Prot. to Ciba–Geigy Corp.*, 120 *N.J.* 164, 174, 576 *A.2d* 784 (1990). ODC requirements must be satisfied for a NJPDES permit to issue. *Id.* at 175, 576 *A.2d* 784.

[2] Enterococci are pathogenic bacteria. *See N.J.A.C.* 7:14A–6.5(b)2ii. Pathogenic means disease-causing. *N.J.A.C.* 7:14A–1.2.

[3] Pub.L. No. 104–297, 110 Stat. 3559.

an order denying the request for an adjudicatory hearing. *Cf. N.J.S.A.* 58:10A–7e (requiring DEP to decide third-party hearing request within thirty days of demand for hearing). The Commissioner's order concluded that because COA failed "to demonstrate the existence of a significant issue of law or fact that is likely to [a]ffect the permit decision," it had not met the statutory requirements for party status and, therefore, COA could not compel an administrative hearing. *See N.J.S.A.* 58:10A–7e(3). The Commissioner noted that the issues forming the basis for COA's hearing request were identical to those raised in its public comments. He determined that because those issues had been considered and rejected by the DEP during the public comment process, the same contentions were unlikely to affect the permit decision rendered.

COA appealed and sought from the Appellate Division an order transferring the matter to the Office of Administrative Law (OAL) either for an adjudicatory hearing on the substance of COA's issues, or to have an administrative law judge (ALJ) assigned to make the threshold determination whether COA had met the requirements for entitlement to a hearing. *See N.J.S.A.* 58:10A–7e (authorizing Commissioner to allow ALJ to determine whether person other than permittee should be found to be "a party to the action"). The panel rejected both applications by COA and concluded that the Commissioner's denial of the hearing request was not arbitrary or capricious. Because COA had relied on its previously submitted comments as justification for its right to a hearing, and the DEP had "exhaustively analyzed and rejected" those same arguments before, the Appellate Division found it reasonable that COA's resubmission of the comments was not regarded as likely to result in a different permitting decision. In addition, the panel substantively reviewed COA's bases for requesting a hearing on the Asbury Park Permit and concluded that none required alteration of DEP's permitting decision. We thus turn to the standard for reviewing the denial of a third party's request for a hearing on a NJPDES permit.

## II.

### A.

The New Jersey Administrative Procedure Act (APA), *N.J.S.A.* 52:14B–1 to –24, "prescribes the procedure to be followed in the event an administrative hearing is otherwise required by statutory law or constitutional mandate." *In re Application of Modern Indus. Waste Serv., Inc.*, 153 *N.J.Super.* 232, 237, 379 *A.*2d 476 (App.Div.1977); *see also Cunningham v. Dep't of Civil Serv.*, 69 *N.J.* 13, 350 *A.*2d 58 (1975) (recognizing APA hearing right also based on administrative fairness when requestor demonstrates specialized property interest about which contested adjudicative factual issues are in dispute). The APA and its implementing regulations afford enhanced notice and hearing procedures to "contested case" litigants. *See N.J.S.A.* 52:14B–9, and –10; *see also N.J.A.C.* 1:1–1.1 to –20.3 (providing uniform rules of procedure for conduct of contested case proceedings).

That said, although the APA establishes the process for a "contested case" proceeding, it does not confer the right to such a hearing, except in the sole instance recognized in *N.J.S.A.* 52:14B–11 (governing license revocations and renewals). *See In re License of Fanelli*, 174 *N.J.* 165, 172–73, 803 *A.*2d 1146 (2002) (discussing APA hearing right for license revocation); *see also* 37 *New Jersey Practice, Administrative Law and Practice* § 4.6 (Lefelt, et al.) (2005). As limited by its definition, the term "contested case" pertains only to those administrative proceedings

in which the legal rights, duties, obligations, privileges, benefits or other legal relations of [the] specific parties are required by constitutional right or by statute to be determined by an agency by decisions, determinations, or orders, addressed to them or disposing of their interests, after opportunity for an agency hearing.

[*N.J.S.A.* 52:14B–2(b).]

Thus, for example, a permittee under the WPCA is statutorily entitled to a contested case proceeding to challenge the determination "to grant, deny, modify, suspend, or revoke a [NJPDES] permit." *N.J.S.A.* 58:10A–7f. *See generally N.J.S.A.* 52:14B–3.1 (acknowledging that generally "[p]ersons who ... are directly

affected by a permitting decision have constitutional and statutory rights and remedies").

A hearing right also may exist for a non-applicant to a permit if that third party can demonstrate a particularized property interest of constitutional significance that is directly affected by an agency's permitting decision. *See N.J.S.A.* 52:14B–3.1. In the companion decision to this matter, we considered a third party's constitutionally based claim to entitlement to an administrative hearing in respect of a wetlands permit issued to an adjacent property owner. *In re Authorization for Freshwater Wetlands Statewide Gen. Permits,* 185 *N.J.* 452, 888 *A.*2d 441, 2006 *WL* 52889 (2005). Implicit in that decision is the recognition that, in this State as well as at the federal level, third parties generally are not able to meet the stringent requirements for constitutional standing in respect of an adjudicatory hearing. *See generally* Kevin A. Coyle, *Standing of Third Parties to Challenge Administrative Agency Actions,* 76 *Cal. L.Rev.* 1061, 1096 (1988).

In this State there has been legislative recognition of the benefits derived from a rigorous review standard when inquiring into the existence of a particularized property interest that generates a third-party hearing right. *See N.J.S.A.* 52:14B–3.1 (citing disruptive effect from "chaotic unpredictability and instability ... to New Jersey's business climate" caused by allowing third-party challenges to permitting decisions by those "who have no particularized property interests or who are not directly affected by a permitting decision"). Accordingly, state agencies are prohibited from granting third-party hearing rights through promulgation of a regulation unless a hearing right exists as a matter of federal law or state statute. *Ibid.*

This matter involves one of those few instances when the Legislature has expanded the class of persons to whom there may be granted a right to contest an agency's permitting decision, notwithstanding the lack of a particularized property interest that is affected. That third-party hearing right is based solely on a

statute and its prerequisites, and is unsupported by any property-right justification.

### B.

In 1990, the WPCA was amended to expand party status to challenge a discharge permit issued by the DEP. *L.* 1190, *c.* 28, § 4 (amending *N.J.S.A.* 58:10A–7). The amendment's stated purpose was to "strengthen[ ] the enforcement of the State's water pollution control and prevention program" through a variety of mechanisms, including "providing for enhanced citizen participation in water pollution prevention and enforcement activities." Senate Revenue, Finance and Appropriations Committee, *Statement to Senate Bill No. 2188*, at 1 (Apr. 26, 1990). The statute, as amended, declared that henceforth a decision by the DEP to grant a discharge permit would constitute a "contested case" under the APA and that, in addition to the permittee, any person considered a "party" to that administrative action "shall have the opportunity to contest the determination in an administrative hearing." *N.J.S.A.* 58:10A–7d. The hearing right added by amendment dispensed with any requirement that a challenger demonstrate a particularized property right that would be directly affected by a permit's issuance and, instead, conferred "party" status when the following criteria were met:

(1) the person's objections to the action ... were raised ... in [a public] hearing held pursuant to [*N.J.S.A.* 58:10A–9] or, if no hearing was held, the objections were raised in a written submission;

(2) the person demonstrates the existence of a significant issue of law or fact;

(3) the person shows that the significant issue of law or fact is likely to affect the permit determination;

(4) the person can show an interest, including an environmental, aesthetic, or recreational interest, which is or may be affected by the permit decision and that the interest fairly can be traced to the challenged action and is likely to be redressed by a decision favorable to that person;

(5) the person submits the following information with the request to be considered a party to the action:

(a) a statement of each legal or factual question alleged to be at issue and its relevance to the permit decision, together with a designation of the specific factual

areas to be adjudicated and the hearing time estimated to be necessary for adjudication;

   (b) information supporting the request [for a hearing] . . .;

*   *   *   *

   (g) specific references to the contested permit conditions, as well as suggested revised or alternative permit conditions, including permit denials, which, in the judgment of the requester, would be required to implement the purposes of [the WPCA]; and

   (h) in the case of application of control or treatment technologies identified in the statement of basis or fact sheet, identification of the basis for the objection, and the alternative technologies or combination of technologies which the requester believes are necessary to meet the requirements of [the WPCA].

[*N.J.S.A.* 58:10A–7e; *see also N.J.A.C.* 7:14A–17.3 (tracking statutory requirements generally and adding that issues not raised during public comment are waived).]

Thus, to obtain a hearing right as a "party" under the WPCA, the requestor procedurally must have raised its objections to the DEP's permitting decision during the applicable public comment opportunity and, substantively, must present a significant issue of law or fact in the hearing request. *N.J.S.A.* 58:10A–7e(1) and (2). The significant issue of law or fact must be one that is "likely to affect the permit determination." *N.J.S.A.* 58:10A–7e(3).

The latter provisions, added by amendment during legislative passage, replaced earlier language in the bill that had allowed a hearing right to any person who raised objections to the permit action during the opportunity for public comment so long as the objections "relate to a significant issue of law or fact that is likely to have a *bearing* on the determination." (emphasis added). *See* Senate Revenue, Finance and Appropriations Committee, *Amendments to Senate Bill No. 2188* (rejecting "bearing on" language and instead inserting standard of "likely to *affect* the permit determination" (emphasis added), as well as other specific criteria that requestor must demonstrate); *see also* Senate Revenue, Finance and Appropriations Committee, *Statement to Senate Bill No. 2188*, at 7 (noting addition of "[s]pecific criteria . . . which third parties requesting to appeal a permit decision by DEP must meet before an appeal hearing is granted"). Other criteria require delineation of permit conditions that the hearing requestor

contends must be altered or revised, along with suggested revisions, in order to implement the purposes of the WPCA. *N.J.S.A.* 58:10A–7e(5)(g). The same specific delineation requirement pertains in respect of control or treatment technologies that the hearing requestor contends must be replaced or augmented. *N.J.S.A.* 58:10A–7e(5)(h).

The specificity required in respect of alternative permit conditions and for control or treatment conditions, coupled with the requirement that the issue of fact or law must be likely to alter the permit determination, evince an overall effort to narrow the original bill in respect of the precise bases on which an adjudicative hearing will be allowed. The WPCA amendment ultimately enacted appears congruent with prior decisions addressing when a trial-type adjudicatory hearing is appropriate in administrative law settings, *i.e.* when there is a triable dispute involving adjudicative facts. *See generally High Horizons Dev. Co. v. Dep't of Transp.*, 120 *N.J.* 40, 49–53, 575 *A.*2d 1360 (1990) (tracking evolution of decisions addressing administrative hearing right in respect of administrative fairness and disputed adjudicatory facts). In *High Horizons* we said that

> the question of whether an adjudicatory hearing is required in any particular administrative context will often hinge on whether courts consider the facts in question to be adjudicatory in nature. Adjudicative facts have been defined by Professor Davis as "facts pertaining to the parties and their businesses and activities. Adjudicative facts usually answer the questions of who did what, where, when, how, why, with what motive or intent; adjudicative facts are roughly the kind of facts that go to a jury in a jury case." In contrast, legislative facts, the determination of which will not normally require a trial-type hearing, "do not usually concern the immediate parties, but are the general facts which help the tribunal decide questions of law and policy and discretion.["] As Professor Davis has explained,
>
> > [a]n agency should engage in formal factfinding when, regardless of the role it is playing, the need for factual accuracy outweighs other considerations and trial-type procedures will effectively decrease uncertainty.
>
> [*High Horizons, supra,* 120 *N.J.* at 49–50, 575 *A.*2d 1360 (quoting Friedman, *Judicial Review Under the Superfund Amendments,* 14 *Colum. J. Envtl. L.* 187, 201 (1989) (quoting 2 K. Davis, *Administrative Law Treatise* § 12:3, at 413 (2d ed.1979))). *See also Cunningham, supra,* 69 *N.J.* at 22, 350 *A.*2d 58.]

█ The WPCA paradigm for when party status must be granted leads us to the conclusion that the statute's hearing requirement is triggered when there is a need for a quasi-judicial adjudicative hearing. Such hearings are appropriate when there exist adjudicative facts in dispute. " 'The law clearly is, at a most elementary level, that because a trial is a process for taking evidence, subject to cross-examination, and because taking evidence is not appropriate except on disputed facts, trial procedure is not required on issues of law, policy or discretion.' " *High Horizons, supra,* 120 *N.J.* at 50, 575 *A.*2d 1360 (quoting Davis, *supra,* § 12:2, at 409–10). Thus, although the WPCA hearing right is conferred by operation of statute and is not based on generalized administrative fairness considerations, nevertheless, the same basis for the grant of an adjudicative hearing controls. There must exist a dispute about adjudicative facts that affects the permit decision. Stated otherwise, even " '[due] process [does not] require[ ] a trial on non-factual issues. What is needed on such issues is argument, written or oral, not evidence and not trial procedure.' " *High Horizons, supra,* 120 *N.J.* at 51, 575 *A.*2d 1360 (quoting Davis, *supra,* § 12:1, at 406). Under the WPCA, a third party's arguments about policy or discretion are entitled to reasoned consideration during the public comment period. On the other hand, to compel an administrative hearing under the WPCA, a proposed "party" must demonstrate the existence of a dispute about adjudicatory facts or about the application of "the law to facts as found" based on evidence presented in a trial-like proceeding. *See High Horizons, supra,* 120 *N.J.* at 50, 575 *A.*2d 1360 (quoting *Cunningham, supra,* 69 *N.J.* at 21, 350 *A.*2d 58.). Disputes over policy or over the creation of a new discretionary regulatory standard are for the agency head to determine and do not compel the holding of a contested-case proceeding.

█ In sum, the WPCA expanded the class of persons entitled to an administrative hearing. It is no longer necessary to articulate a particularized property interest that is affected by the agency's action in order to receive a hearing on a permitting

determination. Nonetheless, to qualify for "party" status under the WPCA, one must demonstrate a significant issue of fact or law for which an adjudicative hearing is required *because* there is a triable dispute concerning adjudicative facts. *See Cunningham, supra,* 69 *N.J.* at 22–23, 350 *A.*2d 58; *see also N.J.A.C.* 7:14A–17.4(b) ("The [DEP] shall deny a request for an adjudicatory hearing if ... [t]he request challenges duly promulgated regulations and not the [DEP's] application of the regulations."). The specific criteria set forth in *N.J.S.A.* 58:10A–7e demonstrate a desire to have a focused disagreement between the DEP and the permit challenger seeking party status that is amenable to resolution through an adjudicatory hearing. The requirement of a dispute involving adjudicative facts keeps the resultant administrative hearing limited to issues resolvable by the application of evidential and procedural rules. Because a policy disagreement is not conducive to resolution in the same manner, such disagreements do not require that the DEP provide an administrative hearing.

### III.

In its hearing request COA relied on the substance of its previously submitted comments on the proposed Permit. The DEP response to that request relied, in turn, on the substance of the agency's answers to those public comments. At the outset, the nature of the request and corresponding response bears comment.

The requirement that agencies set forth in detail the reasons for an agency determination is to permit a reviewing court to evaluate a particular outcome to determine whether it is arbitrary or unreasonable and, where applicable, supported or not by the evidence. *In re Issuance of a Permit by Dep't of Envtl. Prot. to Ciba–Geigy Corp., supra,* 120 *N.J.* at 172–73, 576 *A.*2d 784. Conclusory resolutions impede the judicial function. *See Medici v. BPR Co.,* 107 *N.J.* 1, 23, 526 *A.*2d 109 (1987). Here, when the hearing requestor did no more than to refer back to its

earlier written submissions to the DEP, we can understand why the DEP may have believed that a similar reference to its earlier responsive communication was sufficient. However, when a separate inquiry is raised about whether COA's claimed deficiencies could affect the permitting decision, the reference back to DEP's earlier response does not explain adequately why those claims need not be referred to an adjudicatory hearing.

■ Given the amount of time that has elapsed since issuance of the Permit, a remand for preparation of a more suitable hearing denial document would be wasteful of resources. We can perform our review function in this instance and we are convinced, upon review of the comments and responses, that COA's reasons for requesting party status do not merit the grant of an adjudicatory hearing. In the future, however, the agency is on notice that it must prepare an integrated hearing denial decision. That document must explain the reasons why the DEP Commissioner has concluded that a third party's hearing request does not meet the statutory standard for a hearing in respect of the specific grounds raised. Reliance on DEP's earlier consideration and rejection of those grounds is insufficient. When a third-party hearing request is based on objections raised during the public comment period, as required here, see *N.J.S.A.* 58:10A–7e(1) and *N.J.A.C.* 7:14A–17.3, the denial document must present the basis for the Commissioner's decision that the requestor has not presented a significant issue of fact or law that is likely to alter the permitting decision. *See N.J.S.A.* 58:10A–7e. A conclusory response neither informs the third party adequately nor provides a proper basis for judicial review.[4]

■ In this instance, based on our review of the DEP's responses to COA's comments, it is clear that there are no adjudicative facts in issue. Two comments concerned only COA's disagreement with how the DEP made available documents concerning the

---

[4] Whether a third party has met the statutory definition for a hearing is, as explained herein, a separate inquiry to be conducted by the Commissioner.

Permit. One alleged factual discrepancy in the documents in respect of water volume treated and discharged at the Facility was immaterial to the ultimate Permit determination.[5] Our review of the other objections leads to the conclusion that they generally may be categorized as policy disputes. Many are based on COA's disagreement with DEP's determination not to set a discharge limit for enterococci concentrations.[6] That determination by the DEP is not violative of any legal standard, however, and is within DEP's policy authority. COA's other criticisms similarly fail the test for requiring an administrative hearing. None are rooted in factual error or deficiency based on an identified legal standard that would compel alteration of the Permit determination.[7] In sum, we conclude that the DEP Com-

---

[5] The draft permit renewal notice stated that the average flow at the plant is 1.6 MGD, whereas in the DEP's ODC "Decision Document" the current volume discharged is represented to be 3.3 MGD. Whether the actual plant flow was 1.6 MGD or 3.3 MGD, the Asbury Park facility had a *permitted* monthly average flow of 4.4 MGD and, so, either flow volume was within permit limits. That alleged factual dispute is incapable of meeting the standard for requiring an adjudicatory hearing.

[6] See *N.J.A.C.* 7:14A–6.5(b)2ii ("Discharge permits shall contain a monitoring-only requirement for enterococci organisms, unless [DEP] determines that it is appropriate to require enterococci effluent limitations and publishes a public notice in the New Jersey Register with supporting reasons to this effect.").

[7] For example, none of COA's criticisms about the ODC Decision Document were based on a failure to comply with a legally required standard. Rather, the criticisms were more in the nature of disagreements over policy determinations that were within DEP's regulatory discretion, such as DEP's policy of calculating effluent limits using a mixing zone, see *N.J.A.C.* 7:14A–2.12 (approving use of mixing zone studies when determining permit limits), *and* 40 *C.F.R.* § 125.123 (endorsing use of mixing zones); DEP's policy of relying on fecal coliform concentrations in its programs of waste water discharge monitoring; and DEP's policy of not requiring sediment monitoring in the absence of any federal or state establishment of marine sediment criteria. Similarly, although COA wanted DEP to take certain additional actions, such as development of water quality based effluent limits for toxins and nutrients, it could point to no federal or state requirement that was not satisfied. See *N.J.A.C.* 7:14A–13.3 (describing limited circumstances in which water quality based effluent limits must be established).

missioner was neither arbitrary nor unreasonable in rejecting COA's request for party status and, thus, denying COA an administrative hearing on its objections to the Permit.

## IV.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—7.

*Opposed*—None.

---

COA's urging of more frequent, monthly monitoring for certain parameters also was rejected as not legally compelled.