**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5696-18

IN RE GEORGE TRUESDALE
C/O POINT PLEASANT
PROPERTIES, INC., CAFRA
INDIVIDUAL PERMIT NO.
1524-05-0005.1 CAF 150001
CHALLENGED BY PETER
GAPP AND LISA PERRETTO.

_____

Argued March 22, 2021 – Decided July 29, 2021

Before Judges Messano and Suter.

On appeal from the New Jersey Department of Environmental Protection.

Ira E. Weiner argued the cause for appellants (Beattie Padovano, LLC, attorneys; Ira. E. Weiner, of counsel and on the briefs; Martin R. Kafafian, on the briefs).

Michael J. Gross argued the cause for respondent George Truesdale c/o Point Pleasant Properties, Inc. (Giordano, Halleran & Ciesla, attorneys; Michael J. Gross and Afiyfa H. Ellington, on the brief).

Patrick S. Woolford, Deputy Attorney General, argued the cause for respondent New Jersey Department of Environmental Protection (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant

Attorney General, of counsel; Patrick S. Woolford, on the brief).

PER CURIAM

In November 2015, Point Pleasant 847 Properties, Inc. (the Developer), applied to the New Jersey Department of Environmental Protection (DEP) for an individual permit under the Coastal Area Facility Review Act (CAFRA), N.J.S.A. 13:19-1 to -51. The application sought a permit for "the reconstruction of an existing one-story structure with a new two-story banquet hall facility" at Clark's Landing Marina in Point Pleasant (the Project).

Appellants Peter Gapp and Lisa Perretto own residential property in the nearby Clark's Landing Condominium complex. They retained Thonet Associates, Inc. (Thonet), an engineering firm that filed a lengthy report objecting to the issuance of the permit. The report noted that while the new facility would be built essentially on the footprint of an existing structure, it would result in a three-story, not two-story, building. Among numerous other objections, Thonet explained that the Project's ground floor would be below the regulatory "100-year flood" levels set by regulations issued under the Flood Hazard Area Control Act (the FHA), N.J.S.A. 58:16A-50 to -103.

In May 2016, DEP issued the CAFRA permit (the Permit) and on June 1, 2016, published public notice of its issuance. Appellants did not file an appeal

2

to this court, but rather filed a request for an adjudicatory hearing. See N.J.A.C. 7:7-28.1(a) and (b) (permitting a person to request an adjudicatory hearing "to contest a Department decision to approve or deny a coastal permit" within "[thirty] calendar days after public notice of the decision published in the DEP Bulletin"). Appellants' request included additional comments made by Thonet that included the substance of emails between DEP reviewers and the Developer's experts, which appellants obtained through OPRA. Thonet again noted that the Project anticipated a three-story structure with its ground floor below regulatory flood-area levels.

There were additional submissions to DEP by the Developer which were not provided to appellants. In February 2019, nearly three years after the issuance of the Permit, DEP's Division of Land Use issued a written "Amplification and Supplementation of the Record" (the Amplification). DEP noted that in "[t]he . . . application, [the Developer] represented . . . a proposed renovation of the ground floor of the building was not a 'substantial improvement.'"[1] DEP noted that appellants had challenged that characterization

---

[1] "'Substantial improvement' means any reconstruction, rehabilitation, addition, or other improvement of a structure, the cost of which equals or exceeds [fifty] percent of the market value of the structure as determined before the start of construction of the improvement." N.J.A.C. 7:13-1.2 (2013). The

of the Project in their request for an adjudicatory hearing and, as a result, DEP "requested additional information from the [Developer] . . . to supplement the public record." The Amplification further stated that the Developer "still did not present enough information for [DEP] to determine if the project is a 'substantial improvement,'" and therefore the agency was applying "the more stringent regulations assuming the [P]roject is a 'substantial improvement.'"

The Amplification then considered FHA regulations in existence at the time of the application, specifically N.J.A.C. 7:13-11.5(g)(4) (2013). Those provided that the applicant demonstrates "it is not feasible to construct the lowest floor of any or all portions of the building at least one foot above the flood hazard area design flood elevation[,]" and "the lowest floor . . . is constructed as close as feasible to one foot above the flood hazard area design flood elevation." N.J.A.C. 7:13-11.5(g)(4)(i) and (ii) (2013).

Based solely upon the Developer's submissions, DEP concluded the estimated costs to raise the building several feet was approximately $1.4 million, making regulatory compliance "infeasible." DEP concluded that the Project

Amplification "applied the FHA Regulations in effect at the time of the application submittal." Since then, many of these regulations have been updated and renumbered multiple times.

4 A-5696-18

complied with FHA regulations, whether viewed as "a substantial improvement of a lawfully existing building, . . . or a modification of a lawfully existing building that does not result in a substantial improvement."

More than five months later, on July 25, 2019, DEP's Commissioner issued an order denying appellant's request for an adjudicatory hearing. Citing N.J.A.C. 7:7-28.1(e) and decisions from the Supreme Court and our court, the Commissioner concluded appellants "failed to make the requisite showing to establish their right to a hearing or to demonstrate what particularized property interest entitles them to an adjudicatory hearing in this matter." She noted that appellants "due process rights have been well protected by the repeated opportunities afforded to present written objections and reports from their consultants."

Appellants filed this appeal, challenging both the denial of their request for an adjudicatory hearing and DEP's 2016 issuance of the Permit. They contend they were entitled to an adjudicatory hearing under CAFRA, the Public Trust Doctrine, and because the unusual procedural circumstances denied them the right to participate in the review process. Appellants also advance several arguments that DEP's grant of the Permit was arbitrary, capricious, and unreasonable.

A-5696-18

The Developer and DEP counter by arguing appellants were not entitled to an adjudicatory hearing because they lacked a "particularized property interest sufficient to require a hearing on constitutional or statutory grounds." N.J.S.A. 52:14B-3.2(c). DEP argues appellants' challenge to the Permit should be rejected as untimely. The Developer contends DEP properly evaluated its application and granted the Permit.

We have considered these arguments in light of the record and applicable legal standards. We affirm DEP's denial of an adjudicatory hearing. However, "[i]t should go without saying that turning . . . square corners is minimally what citizens should be able to expect from their government." Klumpp v. Borough of Avalon, 202 N.J. 390, 413 (2010). We conclude that DEP did not do so in this matter. We therefore remand the matter to DEP for further proceedings consistent with this opinion.

## I.

Pursuant to the Administrative Procedure Act (the APA), N.J.S.A. 52:14B-1 to -31, no State agency may promulgate a regulation "that specifically allows a third party to appeal a permit decision," unless "otherwise required by federal law or by . . . statute." N.J.S.A. 52:14B-3.3(a). A third party is defined as any person other than:

A-5696-18

a. An applicant . . . .

b. A State agency; or

c. A person who has a particularized property interest sufficient to require a hearing on constitutional or statutory grounds.

[N.J.S.A. 52:14B-3.2.]

As a result, the Court has clearly held that non-applicants are entitled to an adjudicatory hearing only where they can demonstrate: (1) a right to a hearing under an applicable statute; or (2) a "particularized property interest of constitutional significance that is directly affected by an agency's permitting decision." In re NJPDES Permit No. NJ0025241, 185 N.J. 474, 481–82 (2006). "[T]hird parties generally are not able to meet the stringent requirements for constitutional standing in respect of an adjudicatory hearing." Id. at 482.

These limitations are "intended to prevent the processing of permit applications by State agencies from being bogged down by time-consuming and costly formal hearings" that "consume substantial public and private resources." In re Riverview Dev., LLC, 411 N.J. Super. 409, 424 (App. Div. 2010). The Legislature found that giving third parties the right to hearings would "give rise to a chaotic unpredictability and instability that would be most disconcerting to

7

New Jersey's business climate and would cripple economic development." N.J.S.A. 52:14B-3.1(c).

"[L]andowners objecting to the development of neighboring property" do not, by proximity alone, "have a particularized property interest warranting an adversarial hearing before an administrative law judge." In re Freshwater Wetlands Gen. Permits, 185 N.J. 452, 470 (2006) (citing Spalt v. DEP, 237 N.J. Super. 206, 208–11 (App. Div. 1989)). Collateral economic impacts, traffic, views, quality of life, recreational interest, and property values, are insufficient to establish a third-party right to an adjudicatory hearing. Ibid.

Given these compelling precedents, nothing in appellants' arguments supporting their right to an adjudicatory hearing warrants discussion in a written opinion. R. 2:11-3(e)(1)(E). We affirm DEP's final decision denying appellants an adjudicatory hearing.

## II.

Under the particular facts presented, we do not agree with DEP or the Developer that our consideration of the merits of appellants' challenge to the Permit is procedurally barred. We acknowledge that our Court Rules require any appeal from a final agency decision must be filed within forty-five days "from the date of service of the decision or notice of the action taken." See R.

2:4-1(b). DEP contends that despite the more than three-year delay in the agency's determination of their request for an adjudicatory hearing, appellants were required to challenge the Permit within forty-five days of DEP's public notice. We disagree.

First, DEP's own regulations require that anyone seeking an adjudicatory hearing file the request within thirty days, not forty-five days, of the public notice. N.J.A.C. 7:7-28.1(b). To avoid the "consum[ption of] substantial public and private resources," In re Riverview Dev., 411 N.J. Super. at 424, DEP should have determined whether appellants had standing rather quickly and not have inordinately delayed that decision for more than three years before denying the request. Critically in this case, it was during this more than three-year delay that DEP was considering additional information submitted by the Developer.

DEP's regulations require that if it grants an adjudicatory hearing, it refers the matter to the Office of Administrative Law (OAL) "for a contested case hearing" under the APA. N.J.A.C. 7:7-28.1(f). Only the final decision issued by the Commissioner after the hearing "shall be subject to judicial review." N.J.A.C. 7:7-28.1(g). The regulations are silent regarding the time within which one must appeal the denial of the request for an adjudicatory hearing. DEP suggests, and we agree, that Rule 2:4-1(b) governs; however, it logically follows

that until the request for an adjudicatory hearing is denied, requestors do not know if they will have the ability to contest the grant of a permit in the OAL or not.

The logical endpoint of DEP's argument regarding the timeliness of appellants' challenge to the Permit on its merits is simple:  to avoid the time constraints of Rule 2:4-1(b), appellants should have contemporaneously filed both an appeal of the issuance of the Permit and a request for an adjudicatory hearing.  Based on the particular facts of this case, we disagree.

It goes without saying that had appellants done what DEP suggests, an appeal would have been pending in our court, and quite possibly have been decided prior to the denial of their request for an adjudicatory hearing nearly three years later.  Alternatively, we might have delayed resolution of the appeal pending DEP's decision, but certainly no agency should have the ability to delay this court's disposition of an appeal simply because of an untoward delay in its administrative review processes.  Lastly, what should happen if DEP decides a requestor should receive an adjudicatory hearing while the appeal is pending? How could we conduct a fulsome review of the issuance of the permit in those circumstances not knowing the result of the administrative hearing?  In short, DEP's argument is unpersuasive.

A-5696-18

We recognize that requestors who lack standing under the APA could delay the finality of the issuance of a permit by filing meritless requests for an adjudicatory hearing, but that is not for us to address, particularly under the facts of this case. More importantly, there is a difference between standing under the APA and, in a more general sense, standing by members of the public to challenge DEP's actions. See, e.g., N.J. Dept. of Env't Prot. v. Exxon Mobil Corp., 453 N.J. Super. 272, 298–99 (App. Div. 2018) (discussing standing to challenge agency action in a variety of contexts). That a person lacks standing to request an adjudicatory hearing does not compel the same result for a challenge to the merits of the issuance of a permit.

Turning to the arguments made regarding the issuance of the Permit, we reject appellants' claim that the Developer's notice was insufficient because its description of the Project was inadequate; we also reject their contention that DEP's public notice of its approval of the Permit was inadequate. Neither argument requires discussion in a written opinion. R. 2:11-3(e)(1)(E).

Appellants claim that the Project further impeded the public's physical and visual access to the riverfront and violated both the Public Trust Doctrine and N.J.A.C. 7:7-16.9. "Development that does not comply with N.J.A.C. 7:7-16.9,

Public access, is discouraged in lands and waters subject to public trust rights."

N.J.A.C. 7:7-9.48(b).  However,

> For existing marina development where the proposed activity consists of . . . renovation, redevelopment, or expansion that remains entirely within the parcel containing the existing development, no public access is required if there is no existing public access onsite . . . .  Any existing public access shall be maintained.
>
> [N.J.A.C. 7:7-16.9(p)(1) (2015).[2]]

In the Developer's revised compliance statement, it addressed the public access issue:

> In accordance with [N.J.A.C. 7:7-16.9(p)(1)], any existing public access at an existing marina shall be maintained.  Due to the nature of the daily operations of the marina use, including operating machinery, boat storage and the presence of fueling stations, there is limited existing public access on site.  The site functions as a private marina and therefore does not permit any types of public recreational activities such as swimming, sunbathing or diving due to safety concerns. The proposed development consists of the removal and reconstruction of an existing structure in the same location entirely within the parcel containing the existing development.  The reconstruction of the structure will have no impact on the existing access.  Boat owners will still be able to park and walk safely from their vehicles to their boat slips.
>
> The prior public access requirements from the 2006 Waterfront Development permit and subsequent 2007

---

[2]  Now N.J.A.C. 7:7-16.9(m)(1).

permit modification are not applicable as the approved improvements were never completed.

DEP placed special conditions on the Permit requiring "[a]ny existing public access on the project site must be maintained in accordance with Public Access rule at [N.J.A.C. 7:7-16.9(n)(1)(i).]"[3] DEP clearly considered the public access issue prior to issuing the Permit.

However, given what occurred after the Permit was issued, it is unclear on this record if DEP comprehended the actual scope of the Project. Indeed, the amplification fails to state definitively whether the Project is or is not a "substantial improvement." Because we are remanding for other reasons we

---

[3] That regulation provided:

> For existing commercial development . . . where the proposed activity consists of maintenance, rehabilitation, renovation, redevelopment, or expansion that remains entirely within the parcel containing the existing development, no public access is required if there is no existing public access onsite. Any existing public access shall be maintained or equivalent public access shall be provided onsite. Equivalent public access shall include access that provides for opportunities to participate in the same activities, such as fishing, swimming and passive recreation, in the same manner and by the same number of people as in the existing public access area.
>
> [N.J.A.C. 7:7-16.9(n)(1)(i) (2015).]

explain below, we leave resolution of the merits of appellants' argument in this regard to DEP as part of the remand.

Appellants also argue that we should consider the merits of their appeal without regard to the reasoning DEP employed and described in the Amplification. In other words, appellants argue DEP issued the Permit by erroneously concluding that the Project did not involve a "substantial improvement," and only after appellants objected and submitted a request for an adjudicatory hearing did DEP change course and decide that requiring the Project to comply with FHA rules was infeasible.

We disagree with appellants that the proper recourse is for us to completely ignore the Amplification. It is axiomatic that our review of agency determinations is limited, and "[i]t is settled that '[a]n administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled to our deference.'" Seigel v. N.J. Dept. of Env't Prot., 395 N.J. Super. 604, 613 (App. Div. 2007) (quoting Wnuck v. N.J Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001)). In particular, "[e]ach agency decision involving an application for development under CAFRA invokes . . . competing policy considerations." Id. at 615 (quoting In Re Cape May Cnty. Mun. Util. Auth., 242 N.J. Super. 509, 516 (App. Div.

1990)). We would stray from our responsibilities, and it would be unfair to all parties, especially the Developer and DEP, if we simply ignored the Amplification by accepting appellants' argument that it is outside the agency record.

However, appellants' objection to the Amplification on procedural grounds has merit. Initially, the "entire application" for an individual CAFRA permit shall be provided to DEP and the municipal clerk where the development is located. N.J.A.C. 7:7-24.3(a). There are specific, comprehensive public notice requirements when individual CAFRA permits are sought. N.J.A.C. 7:7-24.3(b); N.J.A.C. 7:7-24.4. Notably, if an applicant submits a "revised application at any time during the . . . review process," it must file the revisions with the municipal clerk and provide the "revisions to any person listed in N.J.A.C. 7:7-24.3(b), whom [DEP] determines would likely be affected by the revised application." N.J.A.C. 7:7-26.1(d).

In this case, the Permit application contained significant information which, by regulation, was accessible for public review. The Developer's notice specifically advised that the "package" could be reviewed at DEP's offices in Trenton or at the municipal clerk's office. The Permit itself provided no explanation for its grant, except that it complied with CAFRA and Coastal Zone

15

Management Rules. The Permit "authorize[d] the reconstruction of the existing one-story building with a two-story banquet hall facility," along with other improvements to the "existing two-story banquet hall."

Although it is unclear when and where Thonet reviewed the application file, the comments it made on behalf of appellants caused DEP to re-examine the situation. This is borne out by the emails in the record, as well as the fact that DEP felt compelled to issue the Amplification. Critically, DEP then accepted additional documentation from the Developer's expert regarding the costs of compliance with FHA regulations. Although the Developer's submissions may not technically be "revisions" to the application, the undisputed record demonstrates that it supplied significant, critical information to justify exceptions to the FHA regulations, and neither appellants nor members of the public were privy to this information either at the time of the original application or afterwards.

Certainly, had the Developer intended to rely on the infeasibility of compliance, rather than solely on whether the Project was a substantial improvement or not, the information supporting DEP's decision, i.e., the estimated costs of compliance, would have been subject to challenge by appellants and others. It never was. Moreover, the specific details of the costs

of compliance are nowhere in the appellate record or in the Amplification. In other words, DEP's conclusion that compliance with FHA regulations was infeasible is not supported by credible evidence in this record. See Tlumac v. High Bridge Stone, 187 N.J. 567, 573 (2007) (noting we defer to an agency's findings of facts if "supported by substantial credible evidence in the record and [if they] are not so wide off the mark as to be manifestly mistaken"); Matter of Thomas Orban/Square Props., LLC, 461 N.J. Super. 57, 77 (App. Div. 2019) ("It . . . is a fundamental of fair play that an administrative judgment express a reasoned conclusion. A conclusion requires evidence to support it and findings of appropriate definiteness to express it." (quoting N.J. Bell Tel. Co. v. Commc'ns Workers of Am., 5 N.J. 354, 375 (1950))).

"[W]henever an administrative agency acts, be that act mandatory or strictly voluntary, it must do so reasonably and in a manner calculated to achieve the policies expressed in the agency's organic statute." In re State & Sch. Emps.' Health Benefits Comm'ns' Implementation of Yucht, 233 N.J. 267, 281 (2018) (citing 37 Steven L. Lefelt et al., N.J. Practice: Administrative Law & Practice § 7.17 (2d ed. 2000)). "[L]ike the means an agency chooses for purposes of meeting a public need contemplated by a statute the agency is charged with implementing, the means of notice in fulfillment of that statutory policy

similarly must be designed to reasonably achieve its intended purpose." Id. at 282.

Ironically, if we were to adopt DEP's argument that appellants' challenge to the Permit is untimely, and they were required to have filed an appeal to this court within forty-five days of publication of the Permit's issuance, the following scenario was likely. DEP would have sought a remand to supplement the record so it could provide its rationale for now deciding compliance was infeasible, i.e., the Amplification. R. 2:5-5(b). We would have likely granted that motion, and appellants would have had the right to appear for purposes of the remand, sought access to the information the Developer submitted to DEP, and submit their own information to supplement the agency record so it was complete for our review. See In re State & Sch. Emps.', 233 N.J. at 285 (requiring remand hearing to develop "a proper record to permit meaningful judicial review," and permitting examination of both "the form and substance" of contested notice to beneficiaries). We conclude that is the appropriate remedy here.

We affirm the final agency decision denying appellants an adjudicatory hearing. We vacate the issuance of the Permit and remand the matter to DEP for a hearing to allow for the development of a full record as to: 1) whether the Project is a "substantial improvement"; and, 2) if DEP concludes it was a

"substantial improvement," whether the Project complied with Public Access regulations and its compliance with FHA regulations was infeasible. DEP shall provide appellants with the information supplied by the Developer supporting the conclusion the agency reached in the Amplification; appellants shall be permitted to submit information to DEP on the issue. We leave it to DEP's discretion whether additional information, submissions, or testimony is appropriate.

Affirmed in part; reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION