**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5637-18

IN RE FLOOD HAZARD
AREA VERIFICATION
(RIPARIAN ZONE ONLY)
FILE NO. 2105-04-0002.1
FHA180001 and FLOOD
HAZARD AREA
APPLICABILITY
DETERMINATION FILE NO.
2105-04-0002.1 APD180001.

_____

Argued September 28, 2021 – Decided November 24, 2021

Before Judges Messano and Accurso.

On appeal from the New Jersey Department of Environmental Protection, File Nos. 2105-04-0002.1 APD180001 and 2105-04-0002.1 FHA180001.

Daniel Greenhouse argued the cause for appellant Skylands Preservation Alliance (Eastern Environmental Law Center, attorneys; Daniel Greenhouse, Senior Staff Attorney, on the briefs).

Neil Yoskin argued the cause for respondent Yaraghi Realty, LLC (Cullen and Dykman, LLP, attorneys; Neil Yoskin, of counsel and on the brief).

Cristin D. Mustillo, Deputy Attorney General, argued the cause for respondent New Jersey Department of Environmental Protection (Andrew J. Bruck, Acting Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Cristin D. Mustillo, Deputy Attorney General, on the brief).

PER CURIAM

The Flood Hazard Area Control Act (the Act), N.J.S.A. 58:16A-50 to -103, "confers broad authority" on the New Jersey Department of Environmental Protection (DEP) "to protect the 'safety, health, and general welfare' of the public by 'delineat[ing] and mark[ing] flood hazard areas' and subjecting them to 'land use regulations.'" Am. Cyanamid Co. v. State, Dep't of Env't. Prot., 231 N.J. Super. 292, 297 (App. Div. 1989) (alterations in original) (quoting N.J.S.A. 58:16A-50(b)). Among other things, the Act authorizes DEP to

> adopt rules and regulations which delineate as flood hazard areas such areas as . . . the improper development and use of which would constitute a threat to the safety, health, and general welfare from flooding. These delineations shall identify the various subportions of the flood hazard area for reasonable and proper use according to relative risk, including the delineation of floodways necessary to preserve the flood carrying capacity of natural streams.
>
> [N.J.S.A. 58:16A-52(a).]

Regulations promulgated under the Act provide that subject to certain exceptions not relevant here, "[a]ll waters in New Jersey are regulated . . . [and

A-5637-18

e]very regulated water possesses a flood hazard area and/or a riparian zone . . . ."  N.J.A.C. 7:13-2.2(a).  These regulated areas "generally overlap." N.J.A.C. 7:13-2.3(d).  Again, with certain exceptions not relevant here, anyone engaging in broadly defined "[r]egulated [a]ctivities," see N.J.A.C. 7:13-2.4, "in a regulated area shall do so only in accordance with" permits or authorizations issued by DEP.  N.J.A.C. 7:13-2.1(b).

In September 2018, the owners of 112 acres of land in Franklin Township, Warren County, intended to construct a 1.2 million square foot commercial warehouse facility with tractor-trailer parking on a portion of the property.[1] They applied to DEP for a Flood Hazard Area Applicability Determination (AD), verifying there was no flood hazard area on the property, and a Riparian Zone Only Verification (RZOV) regarding an unnamed tributary stream of the Musconetcong River.  See N.J.A.C. 7:13-2.3(b) (defining "flood hazard area"); N.J.A.C. 7:13-2.3(c) (defining "riparian zone").  On March 14, 2019, DEP issued an AD, concluding a "Flood Hazard Area Verification [(FHAV)] to establish the stream's flood hazard area elevation must be submitted."  On the same day, DEP issued an RZOV "establishing the limits of the riparian zone

---

[1]  Respondent Yaraghi Realty, LLC (Yaraghi) has since purchased the property.

along the unnamed tributary to the Musconetcong River . . . ."  The RZOV also stated:

> Although the regulated water possesses a flood hazard area that extends onto the subject site, the applicant has elected to only verify the limits of the riparian zone associated with this feature.  Therefore, a flood hazard area exists on the site; however, its limits have not been verified.

Less than two weeks later, however, on March 25, 2019, DEP issued a second AD (the March 25 AD) indicating a Flood Hazard Area Permit was not required for the development.  Citing the original September 2018 submission by the developers' consultant, and "two . . . drawings" submitted in August and December 2018, DEP stated:  "Based on the vertical elevation change between the stream and proposed grading[,] the proposed activity is not located within the flood hazard area.  No activity is proposed within the stream's riparian zone." On April 3, 2019, DEP published notice of the issuance of the RZOV in the DEP Bulletin.  See N.J.A.C. 7:13-21.3(d) (requiring DEP to "provide notice of the decision on an application for a verification . . . in the . . . Bulletin").

On April 26, 2019, appellant Skylands Preservation Alliance (SPA) requested an adjudicatory hearing on the issuance of the RZOV.  See N.J.A.C. 7:13-23.1 (setting procedures to request an adjudicatory hearing under the Act). While that request was pending, SPA learned for the first time of the March 25

4

AD and moved for leave to file an appeal with this court as within time. We denied that request and dismissed the appeal, noting it was "premature." Our July 8, 2019 order specifically said that SPA "may file a notice of appeal from the . . . March 25, 2019[,] decision after the []DEP has issued a decision on [SPA's] request for a hearing, or at the conclusion of the administrative proceedings."

The DEP Commissioner issued an order denying SPA's request for an adjudicatory hearing on July 25, 2019. She concluded that SPA lacked standing to challenge the RZOV. SPA filed its appeal.

SPA argues that DEP's action in issuing the March 25 AD was arbitrary, capricious, and unreasonable. It contends, therefore, that the March 14 AD governs and requires a complete FHAV for the property. SPA urges us to reverse both the March 14 RZOV and the March 25 AD. Alternatively, SPA argues it was entitled to an adjudicatory hearing under the Administrative Procedure Act (the APA), N.J.S.A. 52:14B-1 to -31. Lastly, SPA contends that because DEP issued the March 25 AD beyond the time mandated by the Constructions Permit Law, N.J.S.A. 13:1D-31, the March 14 AD controls.[2]

---

[2] N.J.S.A. 13:1D-31 obligates DEP to "approve, condition or disapprove an application for a construction permit within [ninety] days following the date that

DEP contends that SPA was not entitled to an adjudicatory hearing because it lacked standing. See, e.g., In re NJPDES Permit No. NJ0025241, 185 N.J. 474, 481–82 (2006) (holding that non-applicants are only entitled to an adjudicatory hearing under the APA pursuant to an applicable statute or if they possess a "particularized property interest of constitutional significance that [wa]s directly affected by [the] agency's . . . decision"). DEP also argues that only the Commissioner's July 25, 2019 denial of SPA's request for an adjudicatory hearing is properly before us, because that is the only order included in SPA's notice of appeal. See, e.g., Campagna v. Am. Cyanamid Co., 337 N.J. Super. 530, 550 (App. Div. 2001) (refusing to consider a challenge to an order not listed in the notice of appeal). In a footnote in its brief, DEP asserts that if we intend to address the merits of SPA's arguments, we should remand the matter to the agency so it may explain its reasons for issuing the March 25 AD.

Yaraghi also argues that SPA was not entitled to an adjudicatory hearing because it lacked standing under the APA. It contends that DEP's issuance of

the application is complete." For reasons that follow, we do not address the merits of this argument.

the RZOV and March 25 AD was appropriate under the controlling regulations and supported by sufficient credible evidence before the agency.

I.

We first dispense with DEP's argument regarding the scope of the appeal. The history of motion practice in our court plainly demonstrates that our July 8, 2019 order fully intended to preserve SPA's right to challenge the March 25 AD after DEP decided SPA's request for an adjudicatory hearing. Indeed, our March 2, 2020 order, granting SPA's motion to settle the record, required the agency to include in the items comprising the record on appeal its "March 25, 2019 [AD]; the March 14, 2019 [AD]; and the agency's records regarding these decisions."[3]

"When a party appeals from a final judgment, the party may seek review of interlocutory orders that have not been rendered moot or definitively ruled upon by an appellate court in a prior or separate appeal." Silviera-Francisco v. Bd. of Educ. of Elizabeth, 224 N.J. 126, 140–41 (2016) (citing Elmora Hebrew Ctr., Inc. v. Fishman, 239 N.J. Super. 229, 232 (App. Div. 1990), aff'd, 125 N.J. 404 (1991)). The orders we entered on SPA's motions indicated that DEP's

---

[3] As already noted, because it was unaware at the time that DEP had issued the March 25 AD, SPA's request for an adjudicatory hearing only sought to challenge the RZOV. Our order, therefore, intended to corral all the agency's decisions and include them in the appellate record.

March 14 and March 25, 2019 determinations were essentially interlocutory, because administrative proceedings were not exhausted, and those agency decisions would be within the scope of any appeal SPA might file in the future.

"An interlocutory order is preserved for appeal with the final judgment or final agency decision if it is identified as a subject of the appeal. That may be done in the notice of appeal or the case information statement." Id. at 141 (citations omitted). Here, SPA's case information statement set forth in exacting detail all of DEP's decisions for which it sought review.

## II.

We affirm the decision denying SPA an adjudicatory hearing. Pursuant to the APA, no State agency may promulgate a regulation "that specifically allows a third party to appeal a permit decision," unless "otherwise required by federal law or by . . . statute." N.J.S.A. 52:14B-3.3(a); see also N.J.A.C. 7:13-23.1(e) (denying adjudicatory hearings "in contravention of the [APA]"). A third party is defined as any person other than:

> a. An applicant . . . .
>
> b. A State agency; or
>
> c. A person who has a particularized property interest sufficient to require a hearing on constitutional or statutory grounds.

[N.J.S.A. 52:14B-3.2.]

The Legislature determined that giving third parties the right to hearings would "give rise to a chaotic unpredictability and instability that would be most disconcerting to New Jersey's business climate and would cripple economic development." N.J.S.A. 52:14B-3.1(c); see also In re Riverview Dev., LLC, 411 N.J. Super. 409, 424 (App. Div. 2010) (the limitations were "intended to prevent the processing of permit applications by State agencies from being bogged down by time-consuming and costly formal hearings" that "consume substantial public and private resources"). As a result, "third parties generally are not able to meet the stringent requirements for constitutional standing in respect of an adjudicatory hearing." In re NJPDES Permit No. NJ0025241, 185 N.J. at 482.

SPA argues it was entitled to an adjudicatory hearing because DEP's March 25 AD was issued without the benefit of any agency record explaining the decision that reversed the earlier-issued AD. While we agree with the assertion that there is no agency record explaining the decision, it does not mean SPA has standing under the APA. Moreover, as we explain, there is another remedy which provides SPA with the ability to challenge DEP's decisions. See In re Freshwater Wetlands Statewide Gen. Permits, 185 N.J. 452, 471 (2006) (noting an agency's "administrative procedures, which were subject to judicial

review, satisfied the constitutional demands of due process"). We affirm DEP's denial of an adjudicatory hearing in this case.

III.

We set forth some of the details available in the record as it currently exists. When the developers' application was submitted in September 2018, their environmental consultant, Envirotactics, Inc., acknowledged that available mapping and aerial photographs demonstrated an onsite stream that was an unnamed tributary of the Musconetcong River and "carrie[d] a riparian zone designation of [three-hundred] feet." Envirotactics, however, contended that its onsite inspections "confirm[ed] there [was] no discernible feature in that location," and it asserted that "[d]rainage occur[red] from the adjacent farm fields and a season[al] ditch is formed, however, no defined bed or banks are located onsite." Envirotactics did acknowledge "an offsite stream" on neighboring property "carrie[d] a . . . riparian zone[] that extend[ed] onto the property."

On October 2, 2018, DEP notified the developers that the application was "administratively complete but not technically complete." Specifically, DEP determined that based on "aerial photographs and topography," the unnamed tributary "on-site appears to be a regulated water due to its drainage area in

10

excess of [fifty] acres."  See N.J.A.C. 7:13-2.2(a)(3) (excepting from the definition of regulated waters those with "no discernible channel" but only if they have a drainage area of less than fifty acres).

For reasons unexplained in the record, one day later, on October 3, 2018, DEP conducted a site visit.  On October 5, DEP notified Envirotactics that it was correct; the onsite feature "does not . . . have a defined bed and bank . . . . Therefore, there is no flood hazard area or riparian zone associated with this feature."  Over the ensuing months, DEP and Envirotactics exchanged emails and correspondence about the purported onsite water feature.

On January 2, 2019, DEP deemed the application complete; the agency's email to Envirotactics stated the application was received December 18, 2018, not October 2, making March 17, 2019, the final day of the agency review period.  See N.J.A.C. 7:13-21.3 (requiring DEP to render a decision on the application within ninety calendar days after it "is declared complete for review").

The owner of neighboring property, a professional engineer, sent extensive comments and supporting data to DEP, asserting the department was mistaken about the nonexistence of an onsite regulated water feature.  DEP personnel again visited the property in February 2019, and took photographs.

However, they are not part of the record.  When SPA moved to settle the record on appeal for the third time, DEP certified that the photographs were destroyed.

SPA sent a letter to DEP on February 25, 2019.  It reiterated its objection to "the submitted verification" application and further noted the lack of public notice.  SPA claimed it only became aware of the "verification submission" through the DEP Bulletin issued on January 16, 2019.[4]  SPA contended that the developers failed to properly provide notice to public officials and neighboring property owners as required by N.J.A.C. 7:13-19.1.

On March 1, 2019, DEP advised Envirotactics that it expected to issue its verification letter prior to March 15.  On March 11, DEP produced its internal report.  It indicated no streams were present "on site."  On March 13, DEP produced an internal report recommending issuance of an RZOV.  On March 14, DEP issued the RZOV and the initial AD, which, as noted, concluded a "Flood Hazard Area Verification" was required "to establish the stream's flood hazard area elevation."

SPA raises several arguments grounded in the Act's implementing regulations.  For example, it notes that DEP never required the developers to file a formal application for a FHAV, noting the original application filed in

---

[4]  A copy of which is not in the record.

September 2018 posited that verification unnecessary, despite the presence of an onsite stream in aerial photographs and maps. Envirotactics contended no verification was necessary because there was no defined bed or bank, hence no regulated feature existed. However, SPA properly notes that N.J.A.C. 7:13-2.2(a)(3) excepts from the definition of regulated waters those with "no discernible channel," but only if they have a drainage area of "less than [fifty] acres." DEP had previously determined in October 2018, that the drainage area for the feature as it appeared in photos and on maps was greater than fifty acres.

Furthermore, SPA notes that the RZOV verified only the riparian zone of the offsite stream. The RZOV specifically stated that a concomitant flood hazard area existed "on the site," but its limits were never verified. SPA questions how DEP concluded that no regulated area would be impacted by the construction of the proposed project without requiring some verification of this flood hazard area on a portion of the property.

SPA also contends that DEP's own regulations state that it "will not undertake a site inspection . . . in the context of an applicability determination." N.J.A.C. 7:13-2.5(b). And, if the applicability determination cannot be made on the developer's submission, DEP must "advise[ the applicant] to submit an application for a verification." N.J.A.C. 7:13-2.5(f)(2)(iii). SPA notes that

13

when DEP concluded the developers' September 2018 request for an applicability determination revealed the presence of regulated water on site, the regulations did not permit DEP to conduct a site visit, but rather required the developers to submit a formal application for an FHAV.

Lastly, we note that while a request for an applicability determination does not require public notice, applications for FHAVs do require public notice in some circumstances. See N.J.A.C. 7:13-19.1. SPA raised the issue of a lack of public notice with DEP, but there is no indication in the record that DEP responded.

DEP never addressed these issues, all raised in SPA's brief. Simply put, it is deeply disturbing that DEP filed a brief failing to address anything other than the propriety of denying SPA's request for an adjudicatory hearing, and chose instead to suggest, in a footnote, that a remand to address the merits of SPA's contentions was appropriate.

Yaraghi did not take such a crabbed view of the scope of this appeal since its brief addresses the merits of SPA's arguments. Yaraghi argues that DEP's decision is entitled to deference and presumptively valid. It cites DEP's 2018 Technical Manual as authority for the proposition that a "seasonal ditch" in a "farm field[]" is not regulated water under the Act. According to Yaraghi, "at

worst, DEP staff made the correct decision, but may have simply misstated their reason for having done so." Perhaps, but we cannot conclude such on this record.

We disagree with SPA that based on the current record, we should essentially accept that the March 14, 2019 AD controls, require Yaraghi to apply for an FHAV for the alleged onsite regulated water feature and prohibit any development until DEP verifies any flood hazard areas on the site. That course requires us to stray from our responsibilities and simply ignore what is already in the record, i.e., the March 25 AD. It is axiomatic that our review of agency determinations is limited, and "[i]t is settled that '[a]n administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled to our deference.'" Seigel v. N.J. Dep't of Env't Prot., 395 N.J. Super. 604, 613 (App. Div. 2007) (alterations in original) (quoting Wnuck v. N.J Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001)). This is particularly true given the special expertise required in applying the intricate regulations under the Act. Whether the issuance of the March 25 AD was proper cannot be determined on this record, because DEP has never explained its decision, which SPA contends was a reversal of course from the March 14 AD.

15

"It should go without saying that turning . . . square corners is minimally what citizens should be able to expect from their government . . . ." Klumpp v. Borough of Avalon, 202 N.J. 390, 413 (2010). "[W]henever an administrative agency acts, be that act mandatory or strictly voluntary, it must do so reasonably and in a manner calculated to achieve the policies expressed in the agency's organic statute." In re State & Sch. Emps.' Health Benefits Comm'ns' Implementation of Yucht, 233 N.J. 267, 281 (2018) (citing 37 Steven L. Lefelt et al., N.J. Practice: Administrative Law & Practice § 7.17 (2d ed. 2000)). When the record is inadequate, the appropriate course for us to follow is to require a remand hearing to develop "a proper record to permit meaningful judicial review." Id. at 285.

Given the agency's failure to explain the reasons for its decision or to address the merits of SPA's arguments on appeal, we reluctantly remand the matter to DEP for further proceedings. DEP shall produce its entire file for SPA's inspection and copying, and it shall permit SPA and Yaraghi a thirty-day period to provide comments to the agency. DEP shall then issue a final decision, indicating: 1) whether Yaraghi must submit an FHAV application for any onsite regulated water feature that may exist or why such application is not required by DEP's regulations and the Act; and 2) why an FHAV is unnecessary for the

16

offsite stream's flood hazard area under the particular circumstances presented by the proposed project. That decision shall be the final agency decision and appealable to this court.

Affirmed in part and remanded for further proceedings consistent with this opinion. The remand shall be completed within ninety days, and DEP shall file its decision with this court. We retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5637-18